**VIA FAX 718-741-4599 & CERTIFIED MAIL**

February 21, 2002

Archie L. Mosley, Contracting Officer
VA New York/New Jersey Business Service Center
Department of Veterans Affairs
130 West Kingsbridge Road
Bronx, New York 10468

Re: Your Reference 00BSC/NAP
S&M Management, Inc. - VA Castle Point Campus

Dear Mr. Mosley:

Receipt is acknowledged of your letter dated January 14, 2002. It is unfortunate that in taking more than two months to respond to my client's letter of December 13, 2001, you have chosen to take the positions taken.

Referencing the numbered paragraphs in your February 14, 2002 letter, we respond as follows:

1. No requirement has been found in the Specifications stating that the contractor has to install all required appurtenances to make the system function. To the contrary, the contractor's responsibility, pursuant to Section 01010 of the Specifications, was to undertake the work defined. The responsibility to ensure the system functions is that of the design engineer, not the contractor engaged to perform the specified work.

Section 01010-2 of the Specification defines the scope of the work as "... removal of existing steam lines, connections, hangers, etc. and the replacement with new steam lines, connectors, hangers, etc. as depicted on the contract drawings and as described in the Contract Specifications." The drawings you reference, being D1 and D2 provide "Manhole configurations may not be precise and are intended to depict the general arrangement of piping, valves, connections, etc. On-site inspection of each manhole is recommended to determine location and condition of steam system elements."

There were no compensators existing in either manhole when the on-site inspection for the location of the existing steam system elements was conducted. The Specifications provide for the replacement of existing components. Neither the Specifications nor the drawings require the installation of compensators in these locations when none had previously existed.

This work had been inspected by the project manager, Michael Shaughnessey, who concurred that compensators were not required where none had previously existed. Mr. Shaughnessey inspected and approved the work as performed.

2. Our client advises you misstate the facts in indicating there is a valve missing in Manhole 25 and is on the steam line replaced by S&M. To the contrary, there is no valve missing. Section 02710-18 requires our client's work to be connected to existing work in a neat and workmanlike manner. The plan shows an existing valve in the main trunk line. The Specifications do not require the replacement of any work on the main line. Accordingly, there is no obligation to replace the existing valve.

As with the compensators, this work was also inspected and approved by the project manager, Michael Shaughnessey.



3. A careful review of both the Plans and Specifications does not show any specification requiring the installation of the

manholes other than as installed. Section 02710-7 of the Specifications makes no reference to the depth of installation. Sheet D2, however, does provide guidance. In the typical detail shown, the piping and sleeves are shown to be approximately two (2) feet from the interior floor of the manholes. The manholes were set at a depth to allow for installation in that manner. Further, they were set with the specific consent of the project manager, Michael Shaughnessey, so as to further avoid the potential for leaking if the piping and sleeves were installed at the level of the joint between the two halves of the manholes. Your letter references the manholes not being installed in accordance with the Specifications. The manholes installed were specifically approved for use as a deviation from the cast-in-place requirement of Section 02710-7 of the Specifications. If there are pertinent specifications other than those referenced, please advise so that this issue may be further reviewed.

As with the compensators and valve, this work was also inspected and approved by Mr. Shaughnessey.

4. Insulation. Section 15250 of the Specifications does not state any definition of indoor or outdoor classification. If there is a specification defining manholes and trenches as being outdoor areas exposed to the weather, your advice as to the section of that specification in the project document is requested. The insulation provided and approved for use by the VA is in accordance with Section 02710-18 of the Specifications, being "white Kraft paper bonded to aluminum foil, fiberglass reinforced, pressure sensitive adhesive closure." As you are aware, the insulating material provided was approved in accordance with Section 15250-3. The work was inspected and approved for payment.

5&6. Presuming your refereced paragraphs refer to the punch



list item requesting "replace damaged compensator on supply next to new manhole", we are advised that the compensator is damage free, having been repaired in accordance with the manufacturer's recommendation. Should the compensator not perform in accordance with the manufacturer's specifications in the future during the period of its warranty life, S&M will make any necessary correction at that time.

7. As your letter does not contain an item "a", presumptively you are referring to your numbered paragraph "1" concerning compensators. As with the prior comments concerning compensators, the Plans and Specifications fail to require the installation of a compensator in Building Number 1 where none had previously existed. Should there be some specific requirement in the Project Plans and Specifications with regard to your referenced compensator, your advices defining the specific requirement are requested.

Since December 13, 2001, our client has been attempting to resolve these items with the VA. From October 17, 2001, when the final inspection was made, the VA waited until December 5, 2001 to provide to our client a punch list. Our client immediately responded. The VA then chose not to answer our client's response, necessitating my involvement. In spite of my letters of January 10, 2002 and January 28, 2002, the VA took more than two months to respond to my client's December 13, 2001 letter. The February 14, 2002 response fails to contain any authentication of the inappropriate demands made attempting to compel our client to undertake work not provided for or required, and ignores the work had previously been inspected, found acceptable and approved. Further, my client's repeated requests to meet to arrange for a detainment as referred to in Ms. Pierce's December 5, 2001 letter have been ignored.

The government is in default of its obligation to make prompt payment, having failed to make payment within the required



fourteen (14) days. Demand for interest and penalties in accordance with the prompt payment provision of the Specifications is hereby made.

As has been repeatedly offered, S&M is prepared to meet with you or other representatives of the VA to review these matters. It stands ready, willing and able to do so within the next ten (10) days. It further stands ready, willing and able to perform each and every of its legitimate contractual undertakings. Should substitute contractors be engaged or work performed, S&M will not be responsible for any charge back.

Request is hereby made that all writings or documents in each and every form or format in which they exist pertaining to this

matter, including all contract documents, requests for proposals, bidding documents, acceptances, requests for payments, payment authorizations, inspection reports, letters, memoranda, notes and the like be provided. Please consider this a request under the Freedom of Information Act and respond in accordance with the time requirements therein.

Your advices with regard to the specific requests set forth above concerning the authorities upon which the VA relies in making its demands are requested to be provided within the next ten (10) days.

Thank you for your attention to this matter.

Very truly yours,

John T. Stieh

JTS:ha
cc: S&M Management, Inc.