No. 06-155C
(Senior Judge Hodges)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

S&M MANAGEMENT INCORPORATED,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

FRANKLIN E. WHITE, JR.
Assistant Director

SEAN B. McNAMARA
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, DC 20530
Tele: (202) 305-7573
Fax: (202) 514-8624

March 15, 2007

Attorneys for Defendant

## TABLE OF CONTENTS


TABLE OF AUTHORITIES . . . iii

STATEMENT OF THE ISSUES . . . 1

STATEMENT OF THE CASE . . . 2

STATEMENT OF MATERIAL FACTS . . . 2

I. Project And Dispute Background . . . 2

II. The Disputed Items . . . 4

A. Installation Of Compensators . . . 4

B. Damaged Compensator . . . 6

C. Valve Installation . . . 7

D. Manhole Installation . . . 8

E. Insulation . . . 9

SUMMARY OF THE ARGUMENT . . . 10

ARGUMENT . . . 10

I. Partial Summary Judgment Is Appropriate At This Time . . . 10

II. The Government Is Entitled To Partial Summary Judgment Conclusively Establishing For The Purposes Of Further Litigation In This Case That The Contract Required S&M To Complete All Of The Items On The VA's List Of Deficiencies . . . 12

A. Contract Interpretation Begins With Plain Language . . . 12

B. S&M Was Required To Install All Depicted Compensators . . . 14

1. The Contract Plainly Required Compensators . . . 14

2. S&M's Interpretation Of The Contract Is Unreasonable . . . 15

C. S&M Was Required To Repair The Damaged Compensator . . . 17

D. S&M Was Required To Install A Valve In Manhole 25 . . . . . . . . . . . . . . 18

E. S&M Improperly Installed Two Manholes . . . . . . . . . . . . . . . . . . . . . . . . 19

F. S&M Installed Non-Conforming Insulation . . . . . . . . . . . . . . . . . . . . . . . 21

III. The Contracting Officer's Technical Representative
Did Not Approve Changes To The Contract . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

## TABLE OF AUTHORITIES

### CASES

American Airlines, Inc. v. United States,
204 F.3d 1103 (Fed. Cir. 2000) . . . . . . . . . . 11

American Tel. and Tel. Co. v. United States,
685 F.2d 1361 (Ct. Cl. 1982) . . . . . . . . . . 11

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) . . . . . . . . . . 10

Beacon Const. Co. of Mass. v. United States,
314 F.2d 501 (Ct. Cl. 1963) . . . . . . . . . . 14, 20

Celotex Corp. v. Catrett,
477 U.S. 317 (1986) . . . . . . . . . . 11

Coast Fed. Bank, FSB v. United States,
323 F.3d 1035 (Fed. Cir. 2003) . . . . . . . . . . 12, 14

Dana Corp. v. United States,
470 F.2d 1032 (Ct. Cl. 1972) . . . . . . . . . . 13

Design and Production, Inc. v. United States,
18 Cl. Ct. 168 (1989) . . . . . . . . . . 22

Fortec Constructors v. United States,
760 F.2d 1288 (Fed. Cir. 1985) . . . . . . . . . . 11, 22

Gardiner, Kamya & Associates, P.C., v. Jackson,
467 F.3d 1348 (Fed. Cir. 2006) . . . . . . . . . . 13, 16

M.A. Mortenson Co. v. Brownlee,
363 F.3d 1203 (Fed. Cir. 2004) . . . . . . . . . . 13

McAbee Const. Inc. v. United States,
97 F.3d 1431 (Fed. Cir. 1996) . . . . . . . . . . 12, 15

Medlin Const. Group, Ltd. v. Harvey,
449 F.3d 1195 (Fed. Cir. 2006) . . . . . . . . . . 13, 14, 17

Metric Constructors, Inc. v. National Aeronautics and Space Admin.,
169 F.3d 747 (Fed. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 20

Moden v. United States,
404 F.3d 1335 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Neal & Co. v. United States,
945 F.2d 385 (Fed. Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Norwood Mfg., Inc. v. United States,
21 Cl. Ct. 300 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

NVT Techs., Inc. v. United States,
370 F.3d 1153 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

PCL Construction Services, Inc. v. United States,
53 Fed. Cl. 479 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

P & D Contractors, Inc. v. United States,
25 Cl. Ct. 237 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

P.R. Burke Corp. v. United States
58 Fed. Cl. 549 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Triax Pacific, Inc. v. West,
130 F.3d 1469 (Fed. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 20

Varilease Technology Group, Inc. v. United States,
289 F.3d 795 (fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| S&M MANAGEMENT INCORPORATED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06-155C |
| | ) | (Senior Judge Hodges) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Rules of the United States Court of Federal Claims ("RCFC"), the United States respectfully requests that this Court enter partial summary judgment in its favor. Plaintiff S&M Management Incorporated's ("S&M's") assertions that it was not obligated to complete the work listed upon the Government's list of deficiencies fail as a matter of contract interpretation. The United States is, therefore, entitled to an order that conclusively establishes for the purpose of further proceedings in this case that the contract required S&M to complete the disputed deficiency list items. In support of our motion, we rely upon this brief, our proposed findings of uncontroverted fact, and the appendix attached to this brief.

**DEFENDANT'S BRIEF**

**STATEMENT OF THE ISSUES**

1. Whether partial summary judgment is appropriate at this time upon disputed issues of contract interpretation and other questions of law where there are no facts in dispute that are material to the Court's resolution of the disputed issues and where partial summary judgment will clarify the issues, simplify matters for trial, and generally promote judicial efficiency.

2. Whether the Government is entitled to partial summary judgment conclusively

establishing for the purposes of further litigation in this case that the contract required S&M to complete all of the items on the VA's list of deficiencies.

3. Whether the contracting officer's technical representative's alleged approval of S&M's work precludes partial summary judgment in the Government's favor.

## STATEMENT OF THE CASE

This case arises pursuant to the Contract Disputes Act of 1978 ("CDA"), 41 U.S.C. § 601 et seq. S&M instituted this action on March 1, 2006. In its complaint, which was timely filed within six years of the contracting officer's deemed denial of S&M's claim, S&M requested that this Court enter a judgment in its favor in the amount of at least $78,000, plus CDA interest and attorney fees and disbursements. S&M claimed to be entitled to funds withheld by the Department of Veterans Affairs ("VA") following S&M's failure to complete various tasks identified by the VA at the close of S&M's contract performance. Def. App. 357.[1]

## STATEMENT OF MATERIAL FACTS

### I. Project And Dispute Background

The VA awarded the contract at issue, No. V10N3C-067, to S&M on September 29, 1999. Def. App. 353. The contract obligated S&M to excavate, remove, and replace more than 2000 feet of underground steam pipes at a VA facility in Castle Point, New York. Def. App. 99-100. In particular, S&M was required to dig down to the top of vaults housing the steam pipes, open the vaults, remove asbestos insulation from the vaults, then remove the steam pipes and

[1] "Def. App. ___" refers to the appendix attached to this brief. For the sake of convenience, the appendix duplicates the same page numbers originally assigned to documents produced to the plaintiff; accordingly, gaps in the numbering appear where irrelevant documents were omitted.

their hangers, connections, and other appurtenances. Def. App. 99. The contract then called for the installation of various sizes of steam pipe accompanied by new hangers, connections, and appurtenances. Id. S&M was also required to install two new manholes, eight new manhole covers, and any steam vault covers found to be defective or damaged upon removal. Id. Finally, the contract required S&M to replace any surface materials removed or damaged during the project. Id. The VA issued S&M a notice to proceed on November 9, 1999, for a contract amount of $598,000, which later increased to $678,449.89. Def. App. 355, 491.

At the close of construction, VA employees met with S&M to inspect the work completed. Def. App. 357. This inspection resulted in a list of deficiencies. Def. App. 357-360. The VA forwarded this list to S&M and requested that S&M properly complete the project. Id. S&M disputed the validity of a number of the items on the list and refused to complete the work without change requests. Def. App. 361-63. Specifically, S&M's dispute focused upon five aspects of the project: (1) the installation of "compensators," a type of pipe joint, in various places in the steam system; (2) the repair of a damaged compensator in one of the system's manholes; (3) the installation of a valve in a particular manhole; (4) the manner in which two manholes were installed; and (5) S&M's use of a particular kind of pipe insulation. Def. App. 361-363.

Because S&M declined to complete the listed items, the VA retained a portion of the contract price. This retention is reflected in S&M's final application for payment, submitted on November 28, 2001, which sought a progress payment of $3,857.37 on a remaining balance of $75,603.99, plus a $6,000 retainage. Def. App. 491. The VA disapproved S&M's application, and withheld the remaining contract funds pursuant to the contract's retainage clause, which

provides that the "Contracting Officer may retain from previously withheld funds and future progress payments that amount the Contracting Officer considers adequate for protection of the Government and shall release to the Contractor all the remaining withheld funds." Def. App. 491, 57. The VA did not, however, provide S&M with a specific list of costs associated with the uncompleted list items.

## II. The Disputed Items

### A. Installation Of Compensators

The first item disputed by S&M, the installation of compensators (which absorb pipe movement caused by expansion and contraction), involved various manholes and "Building 1." Def. App. 361, 363, 290, 509-10 (Lancto Declaration ¶¶ 6-10). S&M asserted that it was required only to "replace" those compensators "previously existing," not to install new compensators. Def. App. 361. For this proposition, S&M cited specification Section 01010-2, which provides for "the removal of existing steam lines, connections, hangers, etc., the installation of two new manholes and the replacement with new steam lines, connections, hangers, etc., as depicted on the Contract drawings and described in the Contract specifications . . . ." Def. App. 379; see also Def. App. 100. S&M also relied upon two sentences on the drawings: "Manhole configurations may not be precise, and are intended to depict the general arrangement of piping, valves, connections, etc. On-site inspection of each manhole is recommended to determine locations and conditions of steam system elements." Def. App. 379, 505-06.

S&M claimed that certain compensators in the manholes and in Building 1 were not

present upon inspection,[2] and that S&M was, therefore, not required to install new compensators. Def. App. 379, 381. S&M also claimed that its work had been inspected and approved by a VA employee, Michael Shaughnessy. Finally, S&M asserted that if the VA required compensators to be installed in the disputed locations, S&M would perform this work as a change to the contract. Def. App. 362.

The contract specifications required S&M to construct a "complete underground steam and condensate distribution system including all components such as piping, insulation, protective enclosures, valves, manholes, expansion devices, steam traps, corrosion protection and accessories." Def. App. 282. As part of this system, the specifications spell out the parameters for the expansion devices, and expansion compensators in particular. Def. App. 290-92.

The specifications do not provide specific detail regarding the location or quantity of expansion joints. The contract drawings, however, do provide such detail for the manholes, and the contract provides that "[a]nything mentioned in the specifications and not shown on the drawings, or shown on the drawings and not mentioned in the specifications, shall be of like effect as if shown or mentioned on both." Def. App. 76. The contract also provides that "[a]ny work at variance with that specified or shown in the drawings shall not be performed by the contractor until approved in writing by the contracting officer." Def. App. 86. Drawings D-1 and D-2 show expansion joints present in the manholes. Def. App. 505-06, 509 (Lancto Declaration ¶¶ 7-8). These expansion joints are represented by either rectangles or trapezoids. Def. App. 505-06, 509 (Lancto Declaration ¶ 7). The drawings provide for expansion joints on

[2] For the purposes of this motion, we do not dispute this fact.

all the pipes in manholes 18A, 18B, 18C, 18E, 25, and 25B, but S&M did not install joints on all the pipes. Def. App. 359-60; Def. App. 509 (Lancto Declaration ¶ 8). The compensator in Building 1 was not shown on a drawing, but a compensator in this location was necessary to complete the pipe system properly. Def. App. 509-10 (Lancto Declaration ¶ 9).

The VA has located the contracting officer's delegation of authority to Michael Shaughnessy. App. 530-32. This delegation provided that one of Mr. Shaughnessy's duties was "[a]ssuring that changes in work under a contract are not implemented before written authorization or a contract modification is issued by the Contracting Officer." App. 530. The delegation explicitly forbade Mr. Shaughnessy from "[m]aking changes to contract provisions." App. 531. S&M signed an acknowledgment of this delegation. App. 532. The VA has "located no documentation in the files that shows that S&M was given permission — by the contracting officer or anyone else working for the VA — not to install compensators in manholes 18A, 18B, 18C, 18E, 25, and 25B, or in Building 1." Def. App. 510 (Lancto Declaration ¶ 10).

**B. <u>Damaged Compensator</u>**

Another contract item disputed by S&M also relates to compensators. S&M damaged a compensator in Manhole 18C during installation, and the VA requested that S&M replace the unit. Def. App. 384, 510 (Lancto Declaration ¶ 11). S&M gouged the compensator when grinding pipe in a manhole, compromising the compensator's structural integrity. Def. App. 510 (Lancto Declaration ¶ 11). The submittal sheet for the compensator notes that the "heavy wall housing adds extra protection to the joint minimizing external damage." Def. App. 527 (Exhibit H to Lancto Declaration). The VA has "located no documentation in the files that shows that S&M was given permission — by the contracting officer or anyone else working for the VA —

not to replace the compensator it damaged in Manhole 18C." Def. App. 510 (Lancto Declaration ¶ 11).

The contract provides two separate warranty clauses. First, pursuant to FAR 52.246-21, the contract states that "the Contractor warrants . . . that work performed under this contract . . . is free of any defect in equipment, material, or design furnished, or workmanship performed by the Contractor . . . ." Def. App. 80. The contract obligates the contractor to "remedy at the Contractor's expense any failure to conform, or any defect." Id. This clause is then repeated in the "general requirements" section of the contract. Def. App. 115-16. The contract also contains a guarantee clause, FAR 852.236-75, which provides that the "contractor guarantees that when installed all materials and equipment will be free from defects and will remain so for a period of at least one year from the date of acceptance by the Government." Def. App. 87. Finally, the contract contains a restoration clause requiring that "[u]pon completion of the contract, the Contractor shall deliver the work complete and undamaged." Def. App. 111.

**C. Valve Installation**

S&M also disputed the VA's finding that S&M failed to install properly a valve in Manhole 25. Def. App. 379, 383. S&M asserted that no valve was missing at the location. Def. App. 379. Instead, S&M claimed that a valve was already present on the main trunk line, and that S&M therefore was not obligated to install a new valve. Id.

The drawing for Manhole 25 shows two new steam lines exiting the manhole in the direction of Manhole 25B. Def. App. 505. Instead of replacing these steam lines in their entirety and connecting to the main trunk line with a new valve, S&M terminated the new piping outside of the manhole in the trench. Def. App. 383, 510 (Lancto Declaration ¶ 12). As a result

of S&M's fabrication of a joint outside the manhole, repairs of the joint may be impossible without excavation. Def. App. 510 (Lancto Declaration ¶ 12). The contract required that S&M "[c]onnect new work to existing work in a neat and workmanlike manner." Def. App. 299. The VA has "located no documentation in the files that shows that S&M was given permission — by the contracting officer or anyone else working for the VA — to install these pipes in this manner." Id.

**D. Manhole Installation**

S&M was required by the contract to install two new manholes, manholes 18B and 18E. Def. App. 288, 506. In an attempt to accomplish this contract requirement, S&M installed two pre-cast concrete manholes. Def. App. 379-380. S&M asserted that these manholes "were specifically approved for use as a deviation from the cast-in-place requirement of Section 02710-7 of the Specifications." Def. App. 380. As with other work, S&M claimed its manhole design was "inspected and approved by Mr. Shaughnessey." Id.

The contract required S&M to place a "waterproof membrane between mud slab and bottom concrete slab, and continue up sides to top of side walls." Def. App. 288. The specifications for this membrane were detailed in a separate section of the specifications. Def. App. 335. The purpose of the membrane is to prevent water from leaking into the manhole and doing damage to the pipes inside. Def. App. 511 (Lancto Declaration ¶ 15). S&M did not install any waterproof membrane on manholes 18B or 18E. Id., 383-84. The VA has "located no documentation in the files that shows that S&M was given permission — by the contracting officer or anyone else working for the VA — not to install waterproofing on these manholes." Id.

The tops of the manholes that S&M installed also do not sit flush with the ground. Def. App. 510-11 (Lancto Declaration ¶¶ 13-14), 529 (Exhibit I to Lancto Declaration). The contract contains no specific requirement that manholes be installed in such a manner, but common trade practice dictates such an installation. Def. App. 511 (Lancto Declaration ¶ 14).

**E. Insulation**

S&M disputed the VA's requirement that S&M install a particular type of insulation covering the pipes in the manholes and trenches. Def. App. 376, 380. S&M claimed that the insulation it installed was "in accordance with Section 02710-18 of the Specifications, i.e., "'white Kraft paper bonded to aluminum foil, fiberglass reinforced, pressure sensitive adhesive closure.'" Def. App. 380. S&M claimed that Mr. Shaughnessy approved of S&M's choice of insulation.

The specifications define the type of insulation required in trenches and manholes. Def. App. 304. In both locations, "calcium silicate pipe insulation, glass cloth or aluminum jacket" is required. Id. The specifications draw a distinction between trenches and manholes and "[e]xposed piping in walk-through tunnels," which must be "insulated with fiberglass pipe insulation, all purpose jacket." Id. The types of insulation "jacket" are defined elsewhere in the specifications. Def. App. 299. Jackets for "Insulation Exposed to Weather" are defined as possessing minimum "0.016-inch thick aluminum with locking longitudinal joints." Id. An all-purpose jacket is defined as "White kraft bonded to aluminum foil, fiberglass reinforced, pressure sensitive adhesive closure." Id.

S&M installed an "all-purpose jacket" in the trenches and manholes, and did not install "calcium silicate pipe insulation," with a "glass cloth or aluminum jacket." Def. App. 511

(Lancto Declaration ¶ 16). The type of insulation that S&M installed is inappropriate for trenches and manholes, which are potentially exposed to the elements. Id. The VA has "located no documentation in the files that shows that S&M was given permission — by the contracting officer or anyone else working for the VA — to install the type of insulation it installed in the trenches." Id.

## SUMMARY OF THE ARGUMENT

The VA properly withheld payment from S&M because S&M did not comply with numerous provisions of its contract. S&M: (1) neglected to install certain required steam system compensators; (2) failed to replace a damaged compensator; (3) failed to install a required valve; (4) improperly installed two manholes; and (5) installed non-conforming pipe insulation in trenches and manholes. None of this work was properly approved by the contracting officer. Because these issues relate to contract interpretation, summary judgment is appropriate in this matter. We seek partial summary judgment at this stage because, although the Government bears the burden of proving the appropriateness of the specific amount of money withheld as a result of S&M's failed performance, the VA has yet to quantify this withholding in detail. In sum, S&M's claims fail, and the Court should grant our motion for partial summary judgment.

## ARGUMENT

### I. Partial Summary Judgment Is Appropriate At This Time

Summary judgment is appropriate when the record shows that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Moden v. United States, 404 F.3d 1335, 1342 (Fed. Cir. 2005) (citing RCFC 56(c)). A factual issue is

"genuine" only if the Court could find for the party opposing summary judgment and "material" only if the issue could affect the judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The mechanism of summary judgment is "designed 'to ensure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting FRCP 1). Resolving a dispute via summary judgment is appropriate in contract interpretation cases, which turn upon questions of law. Varilease Technology Group, Inc. v. United States, 289 F.3d 795, 798 (Fed. Cir. 2002).

The moving party bears the burden of showing that no genuine issues of material fact preclude summary judgment. Celotex Corp., 477 U.S. at 323. All justifiable inferences should be drawn in favor of the nonmovant. Anderson, 477 U.S. at 255. Nevertheless, the party opposing summary judgment must show an evidentiary conflict on the record. American Airlines, Inc. v. United States, 204 F.3d 1103, 1112 (Fed. Cir. 2000). Factually unsupported argument is insufficient to defeat a motion for summary judgment. Id. Partial summary judgment may be appropriate "where the resolution of a fairly narrow legal question, requiring no further 'factual ventilation,' will help clarify the issues." American Tel. and Tel. Co. v. United States, 685 F.2d 1361, 1361 n.1 (Ct. Cl. 1982).

Here, partial summary adjudication is appropriate because our motion raises an issue of law — contract interpretation — that is suited to resolution by summary judgment. See Neal & Co. v. United States, 945 F.2d 385, 390 (Fed. Cir. 1991) (citing Fortec Constructors v. United States, 760 F.2d 1288, 1291 (Fed. Cir. 1985)); P.R. Burke Corp. v. United States, 58 Fed. Cl. 549, 554 (2003) (citations omitted). The Court's determination of discrete issues of contract interpretation regarding whether S&M was required to complete the work that the VA identified

in its list of deficiencies will clarify many issues in this case, simplify matters for trial, and generally promote judicial efficiency.

## II. The Government Is Entitled To Partial Summary Judgment Conclusively Establishing For The Purposes Of Further Litigation In This Case That The Contract Required S&M To Complete All Of The Items On The VA's List Of Deficiencies

The Government has a right to withhold payments to a contractor when the contractor fails to complete work required by the contract. See PCL Construction Services, Inc. v. United States, 53 Fed. Cl. 479, 492 (2002); P & D Contractors, Inc. v. United States, 25 Cl. Ct. 237, 241 (1992). When it deducts money from a contractor's earnings, the Government bears the burden of proving that its actions were correct. PCL Construction, 53 Fed. Cl. at 492. To meet its burden, the Government must assign specific costs to the contract items for which it withholds payment. Id.

Here, the final contract amount totaled $678,449.89. Def. App. 491. The VA withheld approximately $78,000 of this total because of S&M's failure to fulfill its contractual obligations. Because the VA has yet to assign specific costs to the contract items that S&M failed to complete, however, we move here for partial summary judgment. Once the Court determines whether S&M did or did not fail to comply with the terms of the contract, we will provide evidence regarding the specific amount of the necessary downward adjustment for each of the disputed items.

### A. Contract Interpretation Begins With The Plain Language

Contract interpretation begins with the plain language of an agreement. Coast Fed. Bank, FSB v. United States, 323 F.3d 1035, 1038 (Fed. Cir. 2003) (en banc). If that language is "clear and unambiguous," this Court gives the terms of a contract their "plain and ordinary meaning."

McAbee Const. Inc. v. United States, 97 F.3d 1431, 1435 (Fed. Cir. 1996). Absent ambiguity, the Court does not resort to extrinsic evidence to aid in interpretation because doing so would cast "a long shadow of uncertainty over all transactions" and contracts. Id. Further, when interpreting a contract, the Court reads the contract as a whole and gives reasonable meaning to all of the contract's provisions. Gardiner, Kamya & Associates, P.C., v. Jackson, 467 F.3d 1348, 1353 (Fed. Cir. 2006) ("GKA"); M.A. Mortenson Co. v. Brownlee, 363 F.3d 1203, 1206 (Fed. Cir. 2004). An interpretation that "gives meaning to all parts of the contract is to be preferred over one that leaves a portion of the contract useless, inexplicable, void, or superfluous." NVT Techs., Inc. v. United States, 370 F.3d 1153, 1159 (Fed. Cir. 2004).

A contract contains an ambiguity if its terms are susceptible to more than one reasonable interpretation. Metric Constructors, Inc. v. National Aeronautics and Space Admin., 169 F.3d 747, 751 (Fed. Cir. 1999). A difference in interpretation alone does not create an ambiguity because "[a]ny group of words can be twisted by strained construction into an ambiguity, but this should not be done." Dana Corp. v. United States, 470 F.2d 1032, 1043 (Ct. Cl. 1972). Instead, an interpretation must fall within a "zone of reasonableness." Id.; Metric, 169 F.3d at 751. An interpretation that renders any part of a contract "inconsistent, superfluous, or redundant" is unreasonable. Medlin Const. Group, Ltd. v. Harvey, 449 F.3d 1195, 1200 (Fed. Cir. 2006) (internal quotations omitted).

If the Court determines that an ambiguity is present in a contract, it next must determine whether that ambiguity is latent or patent. Metric, 169 F.3d at 751. An ambiguity is patent if it is "obvious, gross, or glaring, so that plaintiff contractor had a duty to inquire about it at the start." NVT Technologies, 370 F.3d at 1162 (internal quotation marks and brackets omitted).

An ambiguity may arise from a term of a contract, or from "an obvious omission, inconsistency, or discrepancy of significance." See Beacon Const. Co. of Mass. v. United States, 314 F.2d 501, 504 (Ct. Cl. 1963). The patent ambiguity doctrine prevents contractors "from taking advantage of ambiguities in government contracts by adopting narrow interpretations in preparing their bids and then, after the award, seeking equitable adjustments to perform the additional work the government actually wanted." Triax Pacific, Inc. v. West, 130 F.3d 1469, 1475 (Fed. Cir. 1997).

## B. S&M Was Required To Install All Depicted Compensators

### 1. The Contract Plainly Required Compensators

The specifications and drawings, when read as a whole, required S&M to install compensators in the locations identified by the VA. The contract specifications required S&M to construct a "complete underground steam and condensate distribution system including all components such as piping, insulation, protective enclosures, valves, manholes, expansion devices, steam traps, corrosion protection and accessories." Def. App. 282. As part of this system, the specifications spell out the parameters for the required expansion joints, and expansion compensators in particular. Def. App. 290-92.

The specifications, which do not provide specific detail regarding the location or quantity of expansion joints, should be read in concert with the contract drawings, as required by the contract's "like effect" clause, which provides that "[a]nything mentioned in the specifications and not shown on the drawings, or shown on the drawings and not mentioned in the specifications, shall be of like effect as if shown or mentioned on both." Def. App. 76; see Medlin, 449 F.3d at 1201 (citing cases giving effect to "like effect" provisions). Drawings D-1 and D-2 show expansion joints present in the manholes. Def. App. 505-06, 509 (Lancto

Declaration ¶¶ 7-8). These expansion joints are represented by either rectangles or trapezoids. Def. App. 505-06, 509 (Lancto Declaration ¶ 7). The drawings provide for expansion joints on all the pipes in manholes 18A, 18B, 18C, 18E, 25, and 25B, but S&M did not install joints on all the pipes. Def. App. 359-60, 509 (Lancto Declaration ¶ 8).

The compensator in Building 1 was not shown on a drawing, but a compensator in this location was required to complete the pipe system properly, a contract requirement. Def. App. 509-10 (Lancto Declaration ¶ 9), 282. The compensator was required because a sufficient length of pipe had traversed the trench running to Building 1 to require a compensator. Def. App. 509 (Lancto Declaration ¶ 9). S&M's failure to install a compensator in this location caused the pipe to pull at its anchor and nearly rupture, which could allow steam to escape and create a safety hazard. Id.

**2. S&M's Interpretation Of The Contract Is Unreasonable**

S&M has offered only unreasonable interpretations of the contract to justify its position regarding the compensators, and the Court should reject S&M's interpretations. See McAbee, 97 F.3d at 1435 (rejecting an unreasonable contract interpretation).

In its correspondence with the VA, S&M asserted that it was required only to "replace" those compensators "previously existing," not to install new compensators. Def. App. 361. For this proposition, S&M cited specification Section 01010-2, which provides for "the removal of existing steam lines, connections, hangers, etc., the installation of two new manholes and the replacement with new steam lines, connections, hangers, etc., as depicted on the Contract drawings and described in the Contract specifications . . . ." Def. App. 379; see also Def. App. 100. S&M also cited two sentences on the drawings: "Manhole configurations may not be

precise, and are intended to depict the general arrangement of piping, valves, connections, etc. On-site inspection of each manhole is recommended to determine locations and conditions of steam system elements." Def. App. 379, 505-06. S&M claimed that certain compensators in the manholes and in Building 1 were not present, and that S&M was therefore not required to install new ones. Def. App. 379, 381.

S&M's interpretation is unreasonable for two reasons. First, S&M's reading of the terms "existing" and "replacement" in Section 01010-2 divorces those words from their context, an impermissible approach to contract interpretation. See GKA, 467 F.3d at 1353 (contract must be read as a whole). The very sentence in which those words appear — the sentence itself is contained in the general introductory paragraph to the specifications — requires the installation of "new steam lines, connections, hangers, etc., as depicted on the Contract drawings and described in the Contract specifications . . . ." Def. App. 100. The crucial phrase in this sentence is "on the Contract drawings and described in the Contract specifications," which clarifies where the specific contract requirements are to be found.

To explain the contract drawings, S&M offers its second unreasonable interpretation of the contract. S&M claims that the disclaimers contained on the drawings explain its failure to install compensators. The drawings say: "Manhole configurations may not be precise, and are intended to depict the general arrangement of piping, valves, connections, etc. On-site inspection of each manhole is recommended to determine locations and conditions of steam system elements." Def. App. 379, 505-06. S&M reads these sentences to mean that S&M was not required to install compensators if none were present in the existing manholes.

S&M's argument is groundless. In the first instance, the plain language of the disclaimer

does not absolve S&M of its responsibility to install new compensators. See Coast Fed. Bank, 323 F.3d at 1038 (contract interpretation begins with plain language). All the disclaimer does is "recommend" an inspection to determine "locations and conditions of steam system elements." Def. App. 505-06. The disclaimer does not say that the contractor is not required to install steam system elements depicted on the drawings if those elements are not present in the manholes. Moreover, such a reading would be inconsistent with the specifications, which require the installation of system elements "as depicted on the Contract drawings," not "as found in the manholes." See Def. App. 100; see also Medlin, 449 F.3d at 1200 (contract interpretation should not render portions of the contract inconsistent). S&M's reading would also conflict with a provision of the contract requiring that, while the contractor should ascertain the "dimensions" of existing work, the contractor should not perform work at variance with the work shown on the drawings unless specifically authorized to do so in writing by the contracting officer. Def. App. 86.

In short, S&M has offered only unreasonable interpretations of the contract's expansion joint provisions. Because our interpretations are the only reasonable ones possible, the Court should accept our interpretations, reject S&M's, and grant our motion for partial summary judgment.

### C. S&M Was Required To Repair The Damaged Compensator

The contract also required S&M to replace a compensator damaged during S&M's work. S&M damaged a compensator in Manhole 18C during installation, and the VA requested that S&M replace the unit. Def. App. 384, 510 (Lancto Declaration ¶ 11). The submittal sheet for the compensator notes that the "heavy wall housing adds extra protection to the joint minimizing

external damage." Def. App. 527 (Exhibit H to Lancto Declaration). S&M gouged the compensator when grinding pipe in a manhole, compromising the compensator's structural integrity. Def. App. 510 (Lancto Declaration ¶ 11).

The contract contains numerous relevant clauses, all of which S&M has disobeyed. First, the contract states that "the Contractor warrants . . . that work performed under this contract . . . is free of any defect in equipment, material, or design furnished, or workmanship performed by the Contractor . . . ." Def. App. 80. The contract obligates the contractor to "remedy at the Contractor's expense any failure to conform, or any defect." Id. This clause is then repeated in the "general requirements" section of the contract. Def. App. 115-16. The contract also contains a guarantee clause, which provides that the "contractor guarantees that when installed all materials and equipment will be free from defects and will remain so for a period of at least one year from the date of acceptance by the Government." Def. App. 87. Finally, the contract contains a restoration clause requiring that "[u]pon completion of the contract, the Contractor shall deliver the work complete and undamaged." Def. App. 111.

In its defense, S&M has claimed that it repaired the compensator "in accordance with the manufacturer's recommendation." Def. App. 380. In fact, S&M did not repair the compensator, which was permanently damaged and required replacing. Def. App. 510 (Lancto Declaration ¶ 11). Accordingly, the VA properly withheld funds as a result of the damaged compensator, and S&M is not entitled to a remedy.

**D. S&M Was Required To Install A Valve In Manhole 25**

S&M also failed, pursuant to the contract, to install a valve in Manhole 25. The drawing for Manhole 25 shows two new steam lines exiting the manhole in the direction of Manhole 25B.

Def. App. 505. Instead of replacing these steam lines in their entirety and connecting to the main trunk line with a new valve, S&M terminated the new piping outside of the manhole in the trench. Def. App. 383, 510 (Lancto Declaration ¶ 12). As a result of S&M's fabrication of a joint outside the manhole, repairs of the joint may be impossible without excavation. Def. App. 510 (Lancto Declaration ¶ 12).

To explain this shortcoming, S&M has asserted that no valve was missing at the location. Def. App. 379. Instead, S&M has claimed that a valve was already present on the main trunk line, and that S&M therefore was not obligated to install a new valve. Id. This explanation is meritless. In the first instance, the drawing required S&M to run new pipe into the manhole, not terminate the piping outside the manhole in the trench. Def. App. 505. In this respect, the valve is irrelevant because S&M's work failed even to reach the valve.

Moreover, the contract required S&M to install a "complete underground steam and condensate distribution system including all components such as . . . valves . . . ." Def. App. 282. The contract also required S&M to "[c]onnect new work to existing work in a neat and workmanlike manner." Def. App. 299. S&M shirked these responsibilities, claiming that the valve was present on the main line, outside the scope of the contract. This explanation ignores that the valve was also present on the new line, and S&M was required to replace valves on the new lines. Accordingly, S&M's interpretation of the contract fails, and S&M is not entitled to recovery.

**E. S&M Improperly Installed Two Manholes**

S&M also improperly installed the two new manholes called for by the contract, manholes 18B and 18E. Def. App. 288, 506. S&M's installation was deficient for two reasons.

First, the contract required S&M to place a "waterproof membrane between mud slab and bottom concrete slab, and continue up sides to top of side walls." Def. App. 288. The requirements for this membrane were detailed in a separate section of the specifications. Def. App. 335. The purpose of the membrane is to prevent water from leaking into the manhole and doing damage to the pipes inside. Def. App. 511 (Lancto Declaration ¶ 15). S&M did not install any waterproof membrane on manholes 18B or 18E. Id., 383-84.

Second, the tops of the manholes that S&M installed do not sit flush with the ground. Def. App. 510 (Lancto Declaration ¶ 13), 529 (Exhibit I to Lancto Declaration) (showing the tops of the manholes sitting well above ground level). The contract contains no specific requirement that manholes be installed in such a manner, but common trade practice dictates such an installation. Def. App. 511 (Lancto Declaration ¶ 14). Resort to trade practice is appropriate when considering whether a contract contains an ambiguity. Metric, 169 F.3d 747, 752 (Fed. Cir. 1999). Here, the lack of any specific provision in the contract concerning the height of the manholes does not necessarily give rise to an ambiguity because trade practice renders the contract unambiguous — no reasonable contractor would install manholes as S&M did here. Accordingly, S&M's claim regarding the manholes must fail.

To the extent that an ambiguity does exist, the omission of any specific provision in the contract governing the height of the manholes would give rise to a patent ambiguity. See, e.g., Beacon, 314 F.2d at 502-04 (the omission of a contract provision for weather stripping around windows was obvious enough to rise to the level of a patent ambiguity). S&M's failure to obtain approval for its interpretation of the contract in light of this ambiguity forecloses its right to a remedy now. See Triax, 130 F.3d at 1475.

**F. S&M Installed Non-Conforming Insulation**

Finally, S&M failed to install the appropriate type of insulation on the steam system's pipes located in trenches and manholes. The plain language of the contract requires the installation of a particular type of insulation. In both trenches and manholes, "calcium silicate pipe insulation, glass cloth or aluminum jacket" is required. Def. App. 304. The specifications draw a distinction between trenches and manholes and "[e]xposed piping in walk-through tunnels," which must be "insulated with fiberglass pipe insulation, all purpose jacket." Id. The types of insulation "jacket" are defined elsewhere in the specifications. Def. App. 299. Jackets for "Insulation Exposed to Weather" are defined as possessing minimum "0.016-inch thick aluminum with locking longitudinal joints." Id. An all-purpose jacket is defined as "White kraft bonded to aluminum foil, fiberglass reinforced, pressure sensitive adhesive closure." Id.

S&M installed an "all-purpose jacket" in the trenches and manholes, not "calcium silicate pipe insulation," with a "glass cloth or aluminum jacket" as required by the specifications. Def. App. 380, 511 (Lancto Declaration ¶ 16), 304. The type of insulation that S&M installed is inappropriate for trenches and manholes, which are potentially exposed to the elements. Id. S&M's failure to comply with the terms of the contract precludes its recovery before this Court.

**III. The Contracting Officer's Technical Representative Did Not Approve Changes To The Contract**

S&M has argued that its various failures to comply with the requirements of its contract were "inspected and approved" by Michael Shaughnessy, the project's resident engineer. Def. App. 379.

As an initial matter, Mr. Shaughnessy's delegation of authority provided that one of Mr. Shaughnessy's duties was "[a]ssuring that changes in work under a contract are not implemented

before written authorization or a contract modification is issued by the Contracting Officer." App. 530. The delegation explicitly forbade Mr. Shaughnessy from "[m]aking changes to contract provisions." App. 531. The VA has located no documentation in the files that shows that S&M was given permission — by the contracting officer or anyone else working for the VA — not to comply with the contract, in any respect. Def. App. 509-11 (Lancto Declaration ¶¶ 10, 11, 12, 15, 16). S&M cannot now rely upon Mr. Shaughnessy's alleged oral approval of its work, which would exceed Mr. Shaughnessy's authority. See Design and Production, Inc. v. United States, 18 Cl. Ct. 168, 205-208 (1989) (where a contracting officer's technical representative ("COTR") is specifically deprived of authority to make changes to a contract, the COTR lacks both express and implied authority to approve changes).

Moreover, to the extent that S&M argues that Mr. Shaughnessy's inspection of S&M's work constituted acceptance, S&M is mistaken. The contract's "Inspection of Construction" clause provides otherwise. This clause states that "[g]overnment inspections and tests are for the sole benefit of the Government and do not . . . [c]onstitute or imply acceptance." Def. App. 79; see Fortec Constructors v. United States, 760 F.2d 1288, 1291-92 (Fed. Cir. 1985) (giving effect to a similar inspection clause).

Even if Mr. Shaughnessy "accepted" S&M's work, this acceptance would also not relieve S&M of its responsibility to comply with the contract's requirements. The contract provides that "the Government shall accept, as promptly as practicable after completion and inspection, all work required by the contract." Def. App. 80. This clause continues, however, and notes that "[a]cceptance shall be final and conclusive except for . . . the Government's rights under any warranty or guarantee." Def. App. 80. The contract's "Warranty of Construction" clause

appears on the same page as the acceptance clause, and it provides that S&M warranted that "work performed under this contract conforms to the contract requirements . . . ." Id. Mr. Shaughnessy's alleged acceptance of S&M's work is accordingly irrelevant; the only question is whether S&M complied with the contract's various requirements. See Norwood Mfg., Inc. v. United States, 21 Cl. Ct. 300, 306-07 (1990) (holding that a warranty clause guaranteeing compliance with the "requirements of the contract" applied, notwithstanding the Government's acceptance of a contractor's product). S&M did not comply with the contract requirements, and it accordingly is not entitled to a remedy now.

## CONCLUSION

For the reasons given above, the Court should grant our motion for partial summary judgment.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Franklin E. White, Jr.
FRANKLIN E. WHITE, JR.
Assistant Director

s/ Sean B. McNamara
SEAN B. McNAMARA
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L St., NW
Washington, D.C. 20530
Tele: (202) 305-7573
Fax: (202) 514-8624

March 15, 2007

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on this 15th day of March, 2007, a copy of the foregoing "DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. The parties may access this filing through the Court's system.

s/ Sean B. McNamara