*S&M MANAGEMENT INCORPORATED*
*P.O. BOX 1429 MILFORD, PENNSYLVANIA 18337*
*PA (570) 296-5395 NJ (973) 827-8015*
*Fax (570) 296-2060*

December 13, 2001

Sharon F. Pierce, Contracting Officer
VA New York/New Jersey
Veterans Health Care System
Network Acquisition Program
130 West Kingsbridge Road
Bronx, New York 10468

NETWORK ACQUISITION PROGRAM
130 W. KINGSBRIDGE RD.
10/13ACQ. VISN 3
01 DEC 17 PM 2:02

Re: Your Reference 00BSC

Dear Ms. Pierce:

Before we received your letter of December 5, 2001, most of the items referenced in your attached punch list had already been attended to.

There are three issues referenced in your punch list that had previously addressed with the former project manager, Michael Shaughnessey. These issues are not provided for either in the specifications or on the plans. These are not punch list issues, but were construction details previously addressed. They are as follows:

1. Compensators (expansion joints). The punch list references missing compensators in Manhole 25B, Manhole 25, Manhole 18A, Manhole 18B and Manhole 18E. Those expansion joints were not part of the contracted for work. The contract provides for S&M to replace those previously existing. It does not require us to install new compensators when there had been none in the past. This was confirmed with Michael Shaughnessey during his administration of the project. When additional expansion

joints were requested in Manhole 23, leading to Manhole 23A, those expansion joints were provided by the VA. If expansion joints are desired in the referenced manholes, they will be provided by S&M as a change.

2. Valve in Manhole 25. The project undertaken did not involve any work being performed by S&M on the main trunk, which had previously been replaced. The specifications call for S&M's work to be hooked to the existing equipment on the trunk line in the manholes. In Manhole 25, S&M hooked up to the existing valve in the main trunk. This was undertaken with the consent of the prior contracting officer and his approval of the work performed in authorizing payment. If a valve replacement is sought, S&M will undertake that work as a change.

3. Manholes 18B and E, The manhole is not in ground - reinstall manhole." Cut sheets of the manholes were provided and approved on July 17, 2000. During installation of the manholes, because of a joint between the two four-foot sections, with the approval of Michael Shaughnessey, the manholes were set to an approved depth so as to allow for the openings for the piping to be cut in the lower half of each manhole, thereby avoiding potential leaking problems. This work was previously inspected and approved by Mr. Shaughnessy. Mr. Shaughnessy advised that the exposed portions of the manholes would be screened by the VA with landscaping. If the VA wishes the manholes to be reinstalled, S&M will undertake that work as a change. However, S&M will not guarantee the manholes to be watertight if reinstalled in the manner requested.

The punch list also requests, under the heading "General Items - 'Install outdoor jacketing over all insulation in pipe trench and manhole as per specs.'" - All insulation provided was provided in accordance with the specs. All of the insulation is aluminum-jacketed. The approved specifications from Knauf Pipe for the insulation provided indicates it is aluminum-jacketed. The installation is not an outside application which would require

PVC jacketing, as the insulation is not exposed to the weather. The approved cut sheets outline when PVC jacketing is recommended. Since there is no exposure of the insulation to weather conditions, the cut sheet does not require or even suggest the addition of PVC jacketing. The use of this insulation was also approved by Michael Shaughnessey when he approved payment for its installation and use. As with the previously mentioned items, this is a construction detail rather than a punch list item. If such jacketing is desired, S&M will undertake that work as a change.

Under the heading "Manhole 18E", an item is described as "Replace damaged compensator on supply next to new manhole." The scratch on the compensator was referred to the manufacturer. Repair was made in accordance with the manufacturer's recommendations.

Under the heading "Bldg #1", an item is described as "Fix pipe out of alignment in basement (install compensator)". This is another situation in which no compensator was installed as there had previously been none in place. The specifications do not ~~provide for the installation of a compensator at this location.~~ This work had previously been inspected and approved. If a compensator is desired at this location, S&M will undertake that work as a change.

I would be happy to meet with you at any time to discuss these matters. May I please hear from you at your earliest convenience so that we can proceed with confirmation that the punch list items have been completed or will be completed when weather permits and an appropriate detainage agreed upon.

Very truly yours,

Salvatore J. Sciascia
President

Veterans Health Administration
VA New York/ New Jersey
VETERANS INTEGRATED SERVICE NETWORK 3

VA New York/New Jersey
Business Service Center
Department of Veterans Affairs
130 West Kingsbridge Road
Bronx, New York 10468

FEB 2002
RECEIVED
Levy, Stieh and Blumberg

**FAXED & CERTIFIED Mail: 7000 1670 0000 1186-4560**

February 14, 2002

**IN REPLY REFER TO: 00BSC/NAP**

Mr. John T. Stieh
Levy, Stieh and Blumberg
Attorneys at Law
542 U.S. Routes 6 & 209
P.O. Box D
Milford, PA 18337

Mr. Stieh:

Reference is made to Contract No. V10N3C-067, Project No. 620-98-127, Replace Lateral Steam Lines at the VA Hudson Valley Healthcare System, Castle Point Campus, Castle Point, NY with S & M Management Corp. and to your letter of 1/28/02.

In regards to specific items mentioned in S & M Management's letter of 12/13/01, our response is as follows:

1. Drawings D1 and D2 show compensators in these locations. The specifications state that the contractor (S & M) has to install all required appurtenances to make the system function. The drawings show the compensators, the specifications state that they are to be installed, and the entire steam line that these items are attached to was designed to be replaced, therefore these compensators were supposed to be installed by the contractor.

2. The missing valve in manhole 25 is shown on Drawing D1 and is on the steam line that was replaced by the contractor (S & M) and therefore should be installed new by the contractor (S & M).

3. The manholes were not installed according to the specifications and must be installed accordingly.

4. The VA specifications for pipe insulation clearly states what it considers indoor and outdoor classifications. An outside underground trench is an outdoor location as well as a manhole. It was and is the contractor's (S & M) responsibility to read the specifications and provide what is required accordingly. Knauf pipe insulation according to the submittal has, "An optional factory applied jacket is a white Kraft paper bonded to aluminum foil and reinforced with glass fibers." It does not say it is aluminum jacketed as the contractor ( S & M) states. The manufacturer states that pipe insulation

cannot be exposed to weather. The VA specification considers manholes and trenches outdoor areas and therefore can be exposed to the weather. The contractor should have and must install the appropriate jacketing.

5. S & M Management damaged the compensator during installation.

6. S & M Management must install a new and damage free compensator.

7. Refer back to item "a" above for this issue.

Specification section 02710 Distribution and Transmission Systems (Steam) in general covers the entire project. More specifically, the following sections of the specification can be pointed out as major items:

1. 02710-1.2 Definitions subpart A, B and C
2. 02710-1.5 Submittals subpart C.1.e
3. 02710-2.3 Manholes subpart A, cast in place concrete section b
4. 02710-2.9 Expansion Joints subpart F
5. 02710-3.16 Test subpart D
6. 03300 Cast in Place Concrete (for the manholes)
7. 15250 Insulation subpart 2.1.B.4
8. 15250-3.2 Insulation Installation subpart E.2, subpart F.1, and subpart G

The 02710 sections deal with the compensators and the steam system in general except for #3 above which 's with the concrete for the manholes along with the spec section 03300. The two references to 15250 deal the cover for the insulation exposed to outdoor conditions.

The drawings have details of the manholes showing general locations and directions of the piping. Each of the D1 and D2 drawings shows the manholes.

S& M Management still has not accomplished the majority of the items on the original punchlist. The VA feels that the improper installation of the steam line in Quarters 1 is a safety concern. The steam line is expanding into the quarters knocking itself out of alignment putting pressure on another pipe system. As a result of not installing the compensator to account for the expansion on the piping, this is creating a safety violation. This needs to be corrected immediately. S & M Management has been notified on numerous occasions and it is not corrected.

S & M Management still has not submitted any asbestos abatement manifest closeout documents for either of the asbestos abatement contractors that were their sub-contractors on this construction project. The VA specifications require these documents as this is an Environmental Protection Agency (EPA) requirement. Our asbestos abatement consultant must review these documents for accuracy and accountability.

In conclusion, the punchlist items (see attached) need to be corrected as soon as possible ( S& M had thirty (30) calendar days to complete them from12/5/01). Please inform your client that these items are a part of his contractual obligations and must be corrected within fifteen (15) calendar days after today's date. If he fails to -- so, and due to the nature of this project, the Government will take whatever action(s) is necessary to )plete this punchlist. If there are not enough monies left in this project to complete the punchlist, your client will be held responsible for the difference

APP 374

f there are any questions concerning the above, please call Ms. Sharon Pierce @ (718) 741-4350.

rely Yours,

ARCHIE L. MOSLEY
Contracting Officer

cc: Engineering Service (138)
Contract File (00BSC/NAP)
S & M Management Corp.
Surety

!0-98-127 Castle Point Campus
eplace Lateral System Lines
#C97063
N3C-067

| JI ST )CATION | ITEM DESCRIPTION | Contractor Ini. | VA Initial |
|---|---|---|---|
| eneral Items | Provide manuals for equipment installed | | |
| | Provide asbestos close-out documents | | |
| | Pay Resident of Quarters building 45 $340 for damaged goods in basement | | |
| | Provide daily logs | | |
| | Provide payrolls | | |
| | Provide as builts | | |
| | Clean storage area, Remove pipes, remove trailer, regrade and seed area | | |
| | Install outdoor jacketing over all insulation in pipe trench and manhole as per specs. | | |
| | | | |
| dg #44 Inside | Leaking Solder | | |
| | Clean debris - trash can with insulation | | |
| | Remove fittings - pipes on floor | | |
| | | | |
| anhole outside | Repair Blacktop- scratched by machine | | |
| ldg #44 - manhole | Paint steel in manhole - exposed | | |
| 27A | Manhole #27 OK - check insulation | | |
| | | | |
| ldg #9 | Steam pipe into Bldg 9 not supported for expansion, expanding | | |
| | wrong way (growing into building not to trench) - properly support pipe | | |
| | Missing insulation | | |
| | Repair cracked concrete above pipe | | |
| | | | |
| 25B - | Remove block support for hangar/install proper support - Bldg 12 return | | |
| 3-B9 | Paint steel | | |
| | Remove oversized insulation on return line/install proper insulation - Bldg 12 | | |
| | Install pipe guides to Bldg 9 | | |
| | Install pipe guides to Bldg 8 | | |
| | Clean debris out of manhole | | |
| | Install missing compensator - Bldg 9 return line | | |
| | | | |
| lldg #8 | Install missing di-electric fitting - 1-1/2" | | |
| | Patch insulation-penetration | | |
| | | | |
| lanhole 25 | Install missing two compensators on lines to Bldg 8 - 9 | | |
| | Install missing valve inside vault | | |
| | | | |
| lanhole 23 | Unmarked manhole - "steam" Properly label manhole cover | | |
| 3ldg #13 - Hill Side | Insulation - covering, etc | | |
| | | | |
| 3ldg #13 - back | Fix grading around manhole area | | |
| lanhole 23A | Remove stones | | |
| | Install Missing Hangars on steam line | | |
| | Hangar not fastened | | |
| | Insulation cover oversized - Replace with proper insulation | | |
| | | | |
| lanhole 23B | Install missing hangars | | |
| | | | |
| House by 18 | Insulation falling off pipes - Replace/fasten insulation | | |
| | Paint steel | | |
| | | | |
| 3ldg #7 | No "steam" on manhole - Properly label manhole | | |
| Manhole 19 | No corner bracing on line support return | | |
| | Paint steel supports | | |
| | Into Bldg 7 - supply insulation is oversized - Replace with proper insulation | | |
| | Re-hang support for pipes - 3/4" | | |
| | Install sleeves on pipes | | |

| | | | |
|---|---|---|---|
| ldg #7 | Seal penetration | | |
| | Grading in field unacceptab.e - regrade | | |

'20 '.127 Castle Point Campus
le :Lateral System Lines
'.O. #-C97063
'1ON3C-067

| | | | |
|---|---|---|---|
| ldg #5 | Install missing 2 compensators into Bldg 5 | | |
| lanhole 18A | Insulation end pieces opened (no tape) | | |
| | Flange is resting on concrete (return line) - unacceptable - properly support | | |
| | Replace flange (bent) | | |
| | Paint steel | | |
| | | | |
| lanhole 18B | Paint steel | | |
| | Manhole is not in ground - re-install manhole | | |
| | Install missing vent in new manhole | | |
| | Properly label manhole cover | | |
| | Grading unacceptable - regrade | | |
| lew one outside | Install missing compensators into Bldg 4 | | |
| | | | |
| lanhole 18C | No "steam" on cover - proeprly label manhole | | |
| | Install missing compensators to Bldg 3 | | |
| | Repair insulation on supply to Bldg 3 | | |
| | Properly install insulation to next new manhole - oversized supply line | | |
| | Repair Steam leak on elbow or union | | |
| | Fix Return line from Bldg 3 does not have a di-electric | | |
| | Replace damaged compensator on supply to next new manhole | | |
| | | | |
| ...hole 18E - new | Manhole leaks - secure | | |
| ... by 1 - 2 | Install missing supports | | |
| | Manhole is not in ground - re-install manhole | | |
| | Install missing vent in new manhole | | |
| | Install compensators to quarters | | |
| | Repair Grading by new manhole | | |
| | | | |
| Bldg #1 | Install sleeve on piping | | |
| | Fix Pipe out of alignment in basement (install compensator) | | |
| | Grade area | | |
| | | | |
| | | | |
| Bldg #2 | Install missing di-electric on return line - 1-1/4" | | |
| | Mend tree between bldgs 2-3 | | |
| | Fix lawn between bldgs 2-3 | | |
| | | | |
| Bldg #3 | Install missing di-electric fitting on return | | |
| | | | |
| | | | |
| | | | |
| Bldg #46 - Daycare | Repair sink hole | | |
| | Grading is unacceptable - repair | | |
| | Mend tree between bldgs 45/46 | | |
| | | | |
| Bldg #5 | Install missing Di-electric | | |
| | Replace missing hedge | | |
| | | | |
| Bldg #4 | Install missing Di-electric | | |
| | Remove PVC Conduit near Bldg 2 | | |
| | Replace damaged hedge by 4B | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

**VIA FAX 718-741-4599 & CERTIFIED MAIL**

February 21, 2002

Archie L. Mosley, Contracting Officer
VA New York/New Jersey Business Service Center
Department of Veterans Affairs
130 West Kingsbridge Road
Bronx, New York 10468

Re: Your Reference 00BSC/NAP
S&M Management, Inc. - VA Castle Point Campus

Dear Mr. Mosley:

Receipt is acknowledged of your letter dated January 14, 2002. It is unfortunate that in taking more than two months to respond to my client's letter of December 13, 2001, you have chosen to take the positions taken.

Referencing the numbered paragraphs in your February 14, 2002 letter, we respond as follows:

1. No requirement has been found in the Specifications stating that the contractor has to install all required appurtenances to make the system function. To the contrary, the contractor's responsibility, pursuant to Section 01010 of the Specifications, was to undertake the work defined. The responsibility to ensure the system functions is that of the design engineer, not the contractor engaged to perform the specified work.

Section 01010-2 of the Specification defines the scope of the work as "... removal of existing steam lines, connections, hangers, etc. and the replacement with new steam lines, connectors, hangers, etc. as depicted on the contract drawings and as described in the Contract Specifications." The drawings you reference, being D1 and D2 provide "Manhole configurations may not be precise and are intended to depict the general arrangement of piping, valves, connections, etc. On-site inspection of each manhole is recommended to determine location and condition of steam system elements."

There were no compensators existing in either manhole when the on-site inspection for the location of the existing steam system elements was conducted. The Specifications provide for the replacement of existing components. Neither the Specifications nor the drawings require the installation of compensators in these locations when none had previously existed.

This work had been inspected by the project manager, Michael Shaughnessey, who concurred that compensators were not required where none had previously existed. Mr. Shaughnessey inspected and approved the work as performed.

2. Our client advises you misstate the facts in indicating there is a valve missing in Manhole 25 and is on the steam line replaced by S&M. To the contrary, there is no valve missing. Section 02710-18 requires our client's work to be connected to existing work in a neat and workmanlike manner. The plan shows an existing valve in the main trunk line. The Specifications do not require the replacement of any work on the main line. Accordingly, there is no obligation to replace the existing valve.

As with the compensators, this work was also inspected and approved by the project manager, Michael Shaughnessey.



3. A careful review of both the Plans and Specifications does not show any specification requiring the installation of the

manholes other than as installed. Section 02710-7 of the Specifications makes no reference to the depth of installation. Sheet D2, however, does provide guidance. In the typical detail shown, the piping and sleeves are shown to be approximately two (2) feet from the interior floor of the manholes. The manholes were set at a depth to allow for installation in that manner. Further, they were set with the specific consent of the project manager, Michael Shaughnessey, so as to further avoid the potential for leaking if the piping and sleeves were installed at the level of the joint between the two halves of the manholes. Your letter references the manholes not being installed in accordance with the Specifications. The manholes installed were specifically approved for use as a deviation from the cast-in-place requirement of Section 02710-7 of the Specifications. If there are pertinent specifications other than those referenced, please advise so that this issue may be further reviewed.

As with the compensators and valve, this work was also inspected and approved by Mr. Shaughnessey.

4. Insulation. Section 15250 of the Specifications does not state any definition of indoor or outdoor classification. If there is a specification defining manholes and trenches as being outdoor areas exposed to the weather, your advice as to the section of that specification in the project document is requested. The insulation provided and approved for use by the VA is in accordance with Section 02710-18 of the Specifications, being "white Kraft paper bonded to aluminum foil, fiberglass reinforced, pressure sensitive adhesive closure." As you are aware, the insulating material provided was approved in accordance with Section 15250-3. The work was inspected and approved for payment.

5&6. Presuming your refereced paragraphs refer to the punch



list item requesting "replace damaged compensator on supply next to new manhole", we are advised that the compensator is damage free, having been repaired in accordance with the manufacturer's recommendation. Should the compensator not perform in accordance with the manufacturer's specifications in the future during the period of its warranty life, S&M will make any necessary correction at that time.

7. As your letter does not contain an item "a", presumptively you are referring to your numbered paragraph "1" concerning compensators. As with the prior comments concerning compensators, the Plans and Specifications fail to require the installation of a compensator in Building Number 1 where none had previously existed. Should there be some specific requirement in the Project Plans and Specifications with regard to your referenced compensator, your advices defining the specific requirement are requested.

Since December 13, 2001, our client has been attempting to resolve these items with the VA. From October 17, 2001, when the final inspection was made, the VA waited until December 5, 2001 to provide to our client a punch list. Our client immediately responded. The VA then chose not to answer our client's response, necessitating my involvement. In spite of my letters of January 10, 2002 and January 28, 2002, the VA took more than two months to respond to my client's December 13, 2001 letter. The February 14, 2002 response fails to contain any authentication of the inappropriate demands made attempting to compel our client to undertake work not provided for or required, and ignores the work had previously been inspected, found acceptable and approved. Further, my client's repeated requests to meet to arrange for a detainment as referred to in Ms. Pierce's December 5, 2001 letter have been ignored.

The government is in default of its obligation to make prompt payment, having failed to make payment within the required



fourteen (14) days. Demand for interest and penalties in accordance with the prompt payment provision of the Specifications is hereby made.

As has been repeatedly offered, S&M is prepared to meet with you or other representatives of the VA to review these matters. It stands ready, willing and able to do so within the next ten (10) days. It further stands ready, willing and able to perform each and every of its legitimate contractual undertakings. Should substitute contractors be engaged or work performed, S&M will not be responsible for any charge back.

Request is hereby made that all writings or documents in each and every form or format in which they exist pertaining to this

matter, including all contract documents, requests for proposals, bidding documents, acceptances, requests for payments, payment authorizations, inspection reports, letters, memoranda, notes and the like be provided. Please consider this a request under the Freedom of Information Act and respond in accordance with the time requirements therein.

Your advices with regard to the specific requests set forth above concerning the authorities upon which the VA relies in making its demands are requested to be provided within the next ten (10) days.

Thank you for your attention to this matter.

Very truly yours,

John T. Stieh

JTS:ha
cc: S&M Management, Inc.

Department of
Veterans Affairs

# MEMORANDUM

**DATE:** 25 February 2002

**FROM:** Facility Management Service (138)

**SUBJECT:** Replace Lateral Steam Lines Project 620-98-127 V10N3C-067

**TO:** Contracting Officer (00BSC)

1. Facility Management Service has reviewed S&M Management Inc.'s letter dated 21 February 2002 and feel that the punchlist is correct and items should be corrected immediately.

2. In regards to the specific items mentioned in the letter:
   a) The drawings show compensators in these locations. The specification (01010-1.2) states that the contractor has to install all required appurtenances. A compensator is an appurtentance as farther defined in section 02710-1.2 definitions. The drawings show the compensators, the specification states that they are to be installed, and the entire steam line that these items are attached to was designed to be replaced, therefore these compensators were supposed to be installed by the contractor. S&M's letter specifically mentions that "the responsibility to ensure the system functions is that of the design engineer, not the contractor engaged to perform the specified work". The VA disagrees with this statement. Section 02710-1.5 specifically states that the contractor is responsible for all drawings and calculations from a professional engineer hired by the contractor. This document was never submitted by the contractor. The VA is requesting that this document be submitted. The contractor specifically states that the COTR approved the work. The VA is requesting that the contractor provide evidence to such a claim.
   b) The missing valve in manhole 25 is shown on the drawings and is on the steam line that was replaced by the contractor and therefore should be installed new by the contractor. Why did the contractor terminate the piping outside the manhole instead of inside the manhole? This was not done in a workmanship like manner.
   c) The manholes were not installed according to the specifications and should be installed accordingly. The specifications clearly state that there should be a vapor barrier all around the manhole to ensure that

there is no leaking. Therefore this is not an acceptable explanation. See specification 02710-2.3.

d) The VA specifications for pipe insulation clearly states what it considers indoor and outdoor classifications. An outside underground trench is an outdoor location as well as a manhole. It is the contractor's responsibility to read the specifications and provide what is required accordingly. See specification 02710-3.15.

e) Contractor damaged the compensator during installation. This compensator is not installed as per the workmanship like manner in section 02710 and 01010. Compensator should be installed new and damage free.

3. The contractor still has not accomplished the majority of the items on the original punchlist. Facility Management Service feels that the improper installation of the steam line in quarters 1 is a safety concern. The steam line is expanding into the quarters knocking itself out of alignment putting pressure on another pipe system. As a result of not installing the compensator to account for the expansion on the piping, this is creating a safety violation. This needs to be corrected immediately. The contractor has been notified a couple of times and it is still not corrected.

4. The contractor still has not submitted any asbestos close out documents for either of the asbestos contractors that were his sub-contractors on this construction project. The VA requires these documents as this is an Environmental Protection Agency requirement. Our asbestos consultant must review these documents for accuracy and accountability.

5. In conclusion, the punchlist items need to be corrected as soon as possible. Please inform the contractor that these items are part of the base contract and that they should be corrected immediately.

Joseph Di Losco

Chief Planning & Design/M & O

S&M MANAGEMENT, INCORPORATED
P. O. Box 1429, Route 209
Milford, PA 18337-2429

August 5, 2002

Archie L. Mosley Contracting Officer
VA New York/New Jersey Business Service Center
Department of Veterans Affairs
130 West Kingsbridge Road
Bronx, New York 10468

Re: Project Number 620-98-126

Dear Mr. Mosely:

This letter is sent to advise you that S&M Management Inc. hereby asserts its rights to make a written demand pursuant to paragraph 52.233-1 of the above referenced agreement. Demand is made upon you to approve the claim of S&M Management for payment in the full amount due to S&M Management pursuant to its contract. Demand is further made that you render a decision within 60 days of the date of this letter.

Very truly yours,

Salvatore Sciascia
President

VA New York/ New Jersey
VETERANS INTEGRATED SERVICE NETWORK 3

VA New York/New Jersey
Business Service Center
Department of Veterans Affairs
130 West Kingsbridge Road
Bronx, New York 10468

SHOULD READ FEB 25 2003

**CERTIFIED MAIL: 7000 1670 0000 1186-2238**

February 25, 2002

**IN REPLY REFER TO: 00BSC/NAP**

Mr. Salvatore Sciascia
President
S&M Management, Inc.
P.O. Box 1429, Route 209
Milford, PA 18337-2429

Dear Mr. Sciascia:

Reference is made to Contract No. V10N3C-067, Project No. 620-98-127, Replace Lateral Steam Lines at the VA Hudson Valley Healthcare System, Castle Point Campus, Castle Point, NY.

I am in receipt of a letter dated August 5, 2002 (faxed to this office from the Office of General Counsel). For the record, this letter was never received in this office as submitted.

Your letter in part states that S&M Management Inc. asserts its rights to make a written demand pursuant to paragraph 52.233-1 and that demand is made to approve the claim of S&M Management for payment in the full amount due.

Please submit a copy of stated claim for our review and decision.

If there are any questions concerning this matter, please call me at (718) 584-9000, ext. 3697.

Sincerely,

ARCHIE L. MOSLEY
Contracting Officer

cc: Engineering Service (138)
Contract File (00BSC/NAP)
Surety

McCULLOUGH, GOLDBERGER & STAUDT, LLP
ATTORNEYS AT LAW
1311 MAMARONECK AVENUE, SUITE 340
WHITE PLAINS, NEW YORK
10605

(914) 949-6400
FAX (914) 949-2510

FRANK S. McCULLOUGH, JR.
CHARLES A. GOLDBERGER
JAMES STAUDT
WILLIAM SIMON
LINDA B. WHITEHEAD

MATTHEW A. BAVOSO
ANNE DE SUTTER
DEBORAH A. GOLDBERGER
EDMUND C. GRAINGER, III
PATRICIA W. GURAHIAN
CRIS EDWARD JOHNSON
JOHN P. MESSINA
RUTH F-L. POST
WENDY A. TELLER

BENJAMIN I. TAYLOR (1911-1988)
JULIAN LIBERMAN (1911-1989)
FRANK S. McCULLOUGH (1905-1998)

EVANS V. BREWSTER
MICHAEL A. KRAMER
COUNSEL

OUR FILE NO.

NETWORK ACQUISITION
VISN 3
2003 APR -1 PM 1:45

March 24, 2003

Via Facsimile and Mail

Archie L. Mosley, Contracting Officer
VA New York/New Jersey Business Service Center
Department of Veterans Affairs
130 West Kingsbridge Road
Bronx, New York 10468

Re: Project Number 620-98-126

Dear Mr. Mosely:

This letter is in response to your letter of February 25, 2003, which is dated February 25, 2002.

As you know we are the attorneys for S&M Management Inc. with respect to this matter. In the future I would appreciate your communicating directly with us rather than our client.

I am enclosing a copy of our client's August 5, 2002 letter, which was mailed from our office to you. After you did not respond in a timely matter, I spoke to you and you directed me to speak with your office of general counsel. I did speak with that office and at their request faxed a copy of the August 5th letter to them. Your letter is apparently the response to the August 5th letter.

Without waiving any rights of our client it our position that we have already made the demand pursuant to the contract. For your convenience, I am enclosing a copy of a letter from

John T. Stieh, Esq. dated February 21, 2002. That letter was in response to your letter of February 14, 2002 a copy of which I am also enclosing. Mr. Stieh's letter sets forth the position of our client, which has not changed. Based on the explanation given by Mr. Stieh, it is our position that S&M Management is entitled to full payment under the contract. If you disagree with that statement please let me hear from you as soon as possible.

Very truly your,

Edmund C. Grainger, III

ECG:ch
Enc.
cc: Salvatore Sciascia – S&M Management, Inc.

APPLICATION AND CE[illegible]

TO OWNER: [illegible]ICS
CASTLE POINT CAMPUS
CASTLE POINT, NY

PROJECT: REPLAC[illegible] [illegible]ERAL
STEAM [illegible]S

APPLICATION NO.: [illegible]
PERIOD TO: 11-27-01
PROJECT NOS.: 620-98-12[illegible]

FROM CONTRACTOR:
S&M MANAGEMENT
P.O. BOX 1429
MILFORD, PA 18337

VIA ARCHITECT:

CONTRACT DATE:

CONTRACT FOR:

FILE COPY

DISAPPROVED

Pending completion of punchlist items. J. Di[illegible] chief, Plumbers[illegible]

## CONTRACTOR'S APPLICATION FOR PAYMENT

Application is made for payment, as shown below, in connection with the Contract. Continuation Sheet, AIA Document G703, is attached.

1. ORIGINAL CONTRACT SUM ........ $ 598,000.00
2. Net change by Change Orders ........ $ 80,449.89
3. CONTRACT SUM TO DATE (Line 1 ± 2) ........ $ 678,449.89
4. TOTAL COMPLETED & STORED TO DATE ........ $ 612,703.27
   (Column G on G703)
5. RETAINAGE:
   a. ____% of Completed Work (Columns D + E on G703) $ 6,000.00
   b. ____% of Stored Material (Column F on G703) $ -0-
   Total Retainage (Line 5a + 5b or Total in Column I of G703) ........ $ 6,000.00
6. TOTAL EARNED LESS RETAINAGE ........ $ 606,703.27
   (Line 4 less Line 5 Total)
7. LESS PREVIOUS CERTIFICATES FOR PAYMENT ........ $ 602,845.90
   (Line 6 from prior Certificate)
8. CURRENT PAYMENT DUE ........ $ 3,857.37
9. BALANCE TO FINISH, INCLUDING RETAINAGE $ 71,746.62
   (Line 3 less Line 6)

| CHANGE ORDER SUMMARY | ADDITIONS | DEDUCTIONS |
|---|---|---|
| Total changes approved in previous months by Owner | | |
| Total approved this Month | | |
| TOTALS | | |
| NET CHANGES by Change Order | | |

The undersigned Contractor certifies that to the best of the Contractor's knowledge, infor[mation] and belief the Work covered by this Application for Payment has been complete[d] in accordance with the Contract Documents, that all amounts have been paid by th[e] Contractor for Work for which previous Certificates for Payment were issued and pay[ments] received from the Owner, and that current payment shown herein is now du[e].

CONTRACTOR:

By: [signature] Date: 11-28-01

State of: Pennsylvania
County of: Pike
Subscribed and sworn to before me this 28th day of November 2001

Notary Public: [signature]
My Commission expires: 4/13/2002

Notarial Seal
Tracy McNamara, Notary Public
Milford Twp., Pike County
My Commission Expires Apr. 13, 2002
Member, Pennsylvania Association of Notaries

## ARCHITECT'S CERTIFICATE FOR PAYMENT

In accordance with the Contract Documents, based on on-site observations and the d[ata] comprising this application, the Architect certifies to the Owner that to the best of t[he] Architect's knowledge, information and belief the Work has progressed as indicated, t[he] quality of the Work is in accordance with the Contract Documents, and the Contrac[tor] is entitled to payment of the AMOUNT CERTIFIED.

AMOUNT CERTIFIED ........ $

*(Attach explanation if amount certified differs from the amount applied for. Init[ial] all figures on this Application and on the Continuation Sheet that are changed to conform to the amount certified.)*

ARCHITECT:

By: Date:

This Certificate is not negotiable. The AMOUNT CERTIFIED is payable only to the Co[n]tractor named herein. Issuance, payment and acceptance of payment are witho[ut] prejudice to any rights of the Owner or Contractor under this Contract.

AIA DOCUMENT G702 • APPLICATION AND CERTIFICATE FOR PAYMENT • 1992 EDITION • AIA® • ©1992 • THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, NW., WASHINGTON, DC 20006-5292 • WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.
CAUTION: [illegible]

G702-19[illegible]