IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| S&M MANAGEMENT INCORPORATED,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | No. 06-155C<br>(Judge Hodges, Jr.) |

**DECLARATION OF JUD F. LANCTO**

Pursuant to Title 28 United States Code Section 1746, I declare under penalty of perjury that the following is true and correct.

1. My name is Jud F. Lancto and I am the Chief, Planning and Design Section (Projects Section), for the New York/New Jersey VISN 3, Hudson Valley Health Care System, Department of Veterans Affairs, in Montrose, New York. I am a GS-12 Supervisory General Engineer. This is my third year in my current position as a supervisor. I started with the VA in June 2002 as a General Engineer, GS-11.

2. My current job duties include participating with VA administrators in evaluating facility needs, which includes ranking, selecting, and monitoring projects on the VA tracking report system. My daily tasks involve the supervision of a team of staff general engineers, construction representatives, and engineering technicians. I process staff time and attendance, and I assign design and construction projects to the staff. I also attend meetings and provide consultation through a project's progression to monitor scope, oversee design objectives, negotiate fees and costs, review plans and specifications, monitor construction progress, issue change orders, conduct site inspections, issue final acceptances, and process on-line progress payments for projects. I have also been retained on a number of projects as a staff engineer.

3. I have a Bachelor of Science degree in Civil and Environmental Engineering and a Master of Science in Environmental Engineering. I am a Professional Engineer licensed in the State of New York, State of New Jersey, State of Connecticut, and Commonwealth of Pennsylvania.

4. My work history includes experience at a design engineering consultant firm from 1979 through 1989 and part-time from 1998 through 2002. I was also a partner in a general construction firm involved in civil and mechanical (water and sewage) projects between 1989 and 2000. This firm performed the construction for one Castle Point project and bid on Castle Point water system upgrade improvements.

5. I am familiar with this case and have been involved in the preparation of documentation for legal counsel since May 2006. I reviewed the plans, specifications, submittals, and some correspondence with regard to the punch list deficiencies. Previously, I was informed of some deficiencies that the VA corrected in a subsequent construction project upgrading a portion of the trunk-line, replacing condensate pump assemblies, and correcting deficiencies in manholes 19 and 25. I was assigned as staff engineer for this project.

**Missing compensators in manholes and Building Number 1**

6. S&M did not install certain compensators in manholes 18A, 18B, 18C, 18E, 25, and 25B, or in Building 1. Compensators are a type of expansion joint. Expansion joints are required in a system because as the temperature of steam expands and contracts, piping expands and contracts, both lengthwise and side-to-side. Piping in this project was anchored to trenches, manholes, and buildings. Without the ability to expand and contract, the pipes could pull out their anchors and potentially rupture. The expansion and contraction of the pipes is greater in places such as manholes and other places where the pipes change direction, such as where the pipe entered Building 1.

7. Drawings D-1 and D-2 show the configurations of the manholes in which S&M did not install compensators. The compensators are indicated in two ways on the drawings. First, the drawing for Manhole 25 depicts compensators as trapezoidal shapes. Second, the drawings for Manholes 25B, 18A, 18B, 18C, and 18E depict compensators as rectangles. The trapezoids and the rectangles require the contractor to install something more than a regular joint. This is illustrated by the drawing representing Manhole 19, on Drawing D-2. In this drawing, six lengths of pipe enter the manhole. Four of these pipes, the larger pipes shown, connect to one another with expansion joints, which are shown as trapezoids. Two of the pipes, the smallest two, connect to the other pipes with non-expansion joints, which are depicted differently than the expansion joints.

8. The rectangle and trapezoid shapes do not necessarily show that a compensator joint must be installed in these locations, but they do show that an expansion joint should be installed. S&M did not install any type of expansion joint in these locations. S&M did, however, install compensators at other joints shown on the drawings as rectangles and trapezoids, such as in Manhole 19, Manhole 23, and Manhole 18C. Photo Exhibit A shows the compensators installed in Manhole 18C, and Photo Exhibit B shows the missing compensators in Manhole 18C. The engineer consultant depicted the compensators in Manhole 23 on the lateral to Building 23 on the demolition plan sketch for Manhole 23 using the similar rectangular shape. <u>See</u> Sketch, Exhibit C. Photo Exhibit D and Photo Exhibit E show the lack of compensators in Manhole 18E.

9. The compensator in Building 1 is not shown on any drawings. Nevertheless, a compensator was needed in Building 1 to make the steam system function. The pipe running into Building 1 had traversed enough length of trench to require a compensator. Because S&M did not install a compensator at this location, the pipe there pulled at its anchor, nearly splitting the anchor. If the pipe split the anchor and then split itself, steam

could escape into the building, causing a safety hazard. Photo Exhibit F and Photo Exhibit G show that no compensators were installed in Building 1 and the resulting disorientation of the piping following the piping rupture and temporary repair.

10. S&M never submitted shop drawings showing the location of compensators. Instead, S&M did not install compensators necessary to make the steam system function properly. I have located no documentation in the files that shows that S&M was given permission—by the contracting officer or anyone else working for the VA—not to install compensators in manholes 18A, 18B, 18C, 18E, 25, and 25B, or in Building 1.

**Damaged compensator in Manhole 18C**

11. S&M did not replace a damaged compensator in Manhole 18C. The compensator was damaged when S&M was grinding pipe in the manhole and gouged a piece of the housing of the compensator. S&M's submittal sheet for the compensator says that the "heavy wall housing adds extra protection to the joint minimizing external damage." See Exhibit H. The gouge in the compensator compromised the integrity of the compensator. S&M could not and did not repair this compensator, which needed to be replaced to ensure the operability of the system. I have located no documentation in the files that shows that S&M was given permission—by the contracting officer or anyone else working for the VA—not to replace the compensator it damaged in Manhole 18C.

**Missing valve in Manhole 25**

12. S&M did not connect the pipes going to Manhole 25 in the manhole itself. Instead, S&M terminated the new piping outside of the manhole, in the concrete trench, and connected to the existing pipes outside of the manhole. Accordingly, S&M did not replace the valve on the line to which it was supposed to connect the new piping. This installation will make it difficult to repair the piping if something goes wrong with the joint S&M installed. Because the joint is not in the manhole, excavation of the trench itself may be required if a problem arises. I have located no documentation in the files that shows that S&M was given permission—by the contracting officer or anyone else working for the VA—to install these pipes in this manner.

**Improperly installed Manholes 18B and 18E**

13. In lieu of cast-in-place structures for Manholes 18B and 18E, S&M installed pre-cast concrete manholes. That is, instead of pouring concrete into the ground and creating concrete manholes, S&M purchased pre-built manholes and installed these manholes instead. These pre-built manholes had existing openings through which piping was intended to pass. These openings, however, were not set at the level of the steam system's concrete trench. As a result, to match the manholes' openings with the trenches, S&M could not sink the manholes completely into the ground. Instead, S&M left the upper portions of both manholes sitting above ground, so the top of the manholes, including the covers, did not sit flush with the ground. Exhibit I to this declaration is a photograph of both manholes.

14. It is typical trade practice to install manholes to be flush with the ground. Otherwise, a manhole creates an eye-sore and is more exposed to the weather. I have located no documentation in the files that shows that S&M was given permission—by the contracting officer or anyone else working for the VA—to install the manholes in this fashion.

15. S&M also did not install exterior waterproofing on Manholes 18B and 18E. Waterproofing is required because concrete is porous. Over time, water can seep into concrete—through the concrete itself and through segment seals—and cause it to crack. If this happens, water could enter the manholes and do damage to the pipe installed in the manholes. For example, the pipes in these manholes carry steam and consequently get very hot. If cold water comes into contact with the pipes, rupture can result. Waterproofing prevents this process from happening. I have located no documentation in the files that shows that S&M was given permission—by the contracting officer or anyone else working for the VA—not to install waterproofing on these manholes.

**Non-conforming pipe insulation**

16. To insulate the system's pipes in the trenches, S&M installed white Kraft paper bonded to aluminum foil, which was fiberglass reinforced and contained a pressure sensitive adhesive closure. This type of insulation did not have a minimum 0.016-inch thick aluminum shield with locking longitudinal joints. The type of insulation S&M installed is not suitable for trenches or manholes, both of which are potentially exposed to the elements. An aluminum jacket, which S&M's insulation did not possess, is necessary to protect the pipes from damage. I have located no documentation in the files that shows that S&M was given permission—by the contracting officer or anyone else working for the VA—to install the type of insulation it installed in the trenches and manholes.

Jud F. Lancto (signature)

3/6/07

Jud F. Lancto
Chief, Planning and Design Section (Projects Section)
New York/New Jersey VISN 3
Hudson Valley Health Care System
Department of Veterans Affairs
Montrose, New York

Date