IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| S&M MANAGEMENT INCORPORATED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06-155C |
| | ) | (Senior Judge Hodges) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT**

Pursuant to Rule 56(h)(1) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant respectfully submits the following proposed findings of uncontroverted fact in connection with defendant's concurrently filed motion for partial summary judgment.

1. The VA awarded the contract at issue, No. V10N3C-067, to S&M on September 29, 1999. Def. App. 353.[1]

2. The contract obligated S&M to excavate, remove, and replace more than 2000 feet of underground steam pipes at a VA facility in Castle Point, New York. Def. App. 99-100.

3. S&M was required pursuant to the contract to dig down to the top of vaults housing the steam pipes, open the vaults, remove asbestos insulation from the vaults, then remove the steam pipes and their hangers, connections, and other appurtenances. Def. App. 99.

4. The contract then called for the installation of various sizes of steam pipe accompanied by new hangers, connections, and appurtenances. Id.

5. S&M was also required to install two new manholes, eight new manhole covers, and any steam vault covers found to be defective or damaged upon removal. Id.

---

[1] "Def. App. ___" refers to the appendix filed with defendant's Motion for Partial Summary Judgment.

6. The contract required S&M to replace any surface materials removed or damaged during the project. Id.

7. The VA issued S&M a notice to proceed on November 9, 1999, for a contract amount of $598,000, which later increased to $678,449.89. Def. App. 355.

8. At the close of construction, VA employees met with S&M to inspect the work completed. Def. App. 357. This inspection resulted in a list of deficiencies. Def. App. 357-360. The VA forwarded this list to S&M and requested that S&M properly complete the project. Id. S&M disputed the validity of a number of the items on the list and refused to complete the work without change requests. Def. App. 361-63.

9. The VA retained a portion of the contract price because S&M declined to complete the listed items. Def. App. 491. This retention is reflected in S&M's final application for payment, submitted on November 28, 2001, which sought a progress payment of $3,857.37 on a remaining balance of $75,603.99, plus a $6,000 retainage. Id. The VA disapproved S&M's application, and withheld the remaining contract funds pursuant to the contract's retainage clause, which provides that the "Contracting Officer may retain from previously withheld funds and future progress payments that amount the Contracting Officer considers adequate for protection of the Government and shall release to the Contractor all the remaining withheld funds." Def. App. 491, 57.

10. The VA has not provided S&M with a specific list of costs associated with the uncompleted list items.

11. The first item disputed by S&M, the installation of compensators (which absorb pipe movement caused by expansion and contraction), involved various manholes and a "Building 1."

Def. App. 361, 363, 290, 509-10 (Lancto Declaration ¶¶ 6-10).

12. The contract specifications required S&M to construct a "complete underground steam and condensate distribution system including all components such as piping, insulation, protective enclosures, valves, manholes, expansion devices, steam traps, corrosion protection and accessories." Def. App. 282. As part of this system, the specifications spell out the parameters for the expansion devices, and expansion compensators in particular. Def. App. 290-92.

13. The specifications do not provide specific detail regarding the location or quantity of expansion joints. The contract drawings, however, do provide such detail for the manholes, and the contract provides that "[a]nything mentioned in the specifications and not shown on the drawings, or shown on the drawings and not mentioned in the specifications, shall be of like effect as if shown or mentioned on both." Def. App. 76.

14. The contract also provides that "[a]ny work at variance with that specified or shown in the drawings shall not be performed by the contractor until approved in writing by the contracting officer." Def. App. 86.

15. Drawings D-1 and D-2 show expansion joints present in the manholes. Def. App. 505-06, 509 (Lancto Declaration ¶¶ 7-8). These expansion joints are represented by either rectangles or trapezoids. Def. App. 505-06, 509 (Lancto Declaration ¶ 7).

16. The drawings provide for expansion joints on all the pipes in manholes 18A, 18B, 18C, 18E, 25, and 25B, but S&M did not install joints on all the pipes. Def. App. 359-60, 509 (Lancto Declaration ¶ 8).

17. The compensator in Building 1 was not shown on a drawing, but a compensator in this

location was necessary to complete the pipe system properly. Def. App. 509-10 (Lancto Declaration ¶ 9).

18. The VA has "located no documentation in the files that shows that S&M was given permission—by the contracting officer or anyone else working for the VA—not to install compensators in manholes 18A, 18B, 18C, 18E, 25, and 25B, or in Building 1." Def. App. 510 (Lancto Declaration ¶ 10).

19. S&M damaged a compensator in Manhole 18C during installation, and the VA requested that S&M replace the unit. Def. App. 384, 510 (Lancto Declaration ¶ 11).

20. S&M gouged the compensator when grinding pipe in a manhole, compromising the compensator's structural integrity. Def. App. 510 (Lancto Declaration ¶ 11).

21. The submittal sheet for the compensator notes that the "heavy wall housing adds extra protection to the joint minimizing external damage." Def. App. 527 (Exhibit H to Lancto Declaration).

22. The VA has "located no documentation in the files that shows that S&M was given permission—by the contracting officer or anyone else working for the VA—not to replace the compensator it damaged in Manhole 18C." Def. App. 510 (Lancto Declaration ¶ 11).

23. The contract provides two separate warranty clauses. First, pursuant to FAR 52.246-21, the contract states that "the Contractor warrants . . . that work performed under this contract . . . is free of any defect in equipment, material, or design furnished, or workmanship performed by the Contractor . . ." Def. App. 80. The contract obligates the contractor to "remedy at the Contractor's expense any failure to conform, or any defect." Id. This clause is then repeated in the "general requirements" section of the contract. Def. App. 115-16.

24. The contract also contains a guarantee clause, FAR 852.236-75, which provides that the "contractor guarantees that when installed all materials and equipment will be free from defects and will remain so for a period of at least one year from the date of acceptance by the Government." Def. App. 87.

25. The contract contains a restoration clause requiring that "[u]pon completion of the contract, the Contractor shall deliver the work complete and undamaged." Def. App. 111.

26. The drawing for Manhole 25 shows two new steam lines exiting the manhole in the direction of Manhole 25B. Def. App. 505.

27. Instead of replacing these steam lines in their entirety and connecting to the main trunk line with a new valve, S&M terminated the new piping outside of the manhole in the trench. Def. App. 383, 510 (Lancto Declaration ¶ 12).

28. As a result of S&M's fabrication of a joint outside the manhole, repairs of the joint may be impossible without excavation. Def. App. 510 (Lancto Declaration ¶ 12).

29. The contract required that S&M "[c]onnect new work to existing work in a neat and workmanlike manner." Def. App. 299.

30. The VA has "located no documentation in the files that shows that S&M was given permission—by the contracting officer or anyone else working for the VA—to install these pipes in this manner." Id.

31. S&M was required by the contract to install two new manholes, manholes 18B and 18E. Def. App. 288, 506.

32. In an attempt to accomplish this contract requirement, S&M installed two pre-cast concrete manholes. Def. App. 379-380.

33. The contract required S&M to place a "waterproof membrane between mud slab and bottom concrete slab, and continue up sides to top of side walls." Def. App. 288. The specifications for this membrane were detailed in a separate section of the specifications. Def. App. 335.

34. The purpose of the membrane is to prevent water from leaking into the manhole and doing damage to the pipes inside. Def. App. 511 (Lancto Declaration ¶ 15).

35. S&M did not install any waterproof membrane on manholes 18B or 18E. Id.; Def. App. 383-84.

36. The VA has "located no documentation in the files that shows that S&M was given permission—by the contracting officer or anyone else working for the VA—not to install waterproofing on these manholes." Id.

37. The tops of the manholes that S&M installed also do not sit flush with the ground. Def. App. 510-11 (Lancto Declaration ¶¶ 13-14), 529 (Exhibit I to Lancto Declaration).

38. The contract contains no specific requirement that manholes be installed in such a manner, but common trade practice dictates such an installation. Def. App. 511 (Lancto Declaration ¶ 14).

39. The specifications define the type of insulation required in trenches and manholes. Def. App. 304.

40. In both locations, "calcium silicate pipe insulation, glass cloth or aluminum jacket" is required. Id.

41. The specifications draw a distinction between trenches and manholes and "[e]xposed piping in walk-through tunnels," which must be "insulated with fiberglass pipe insulation, all

purpose jacket." Id.

42. The types of insulation "jacket" are defined elsewhere in the specifications. Def. App. 299. Jackets for "Insulation Exposed to Weather" are defined as possessing minimum "0.016-inch thick aluminum with locking longitudinal joints." Id.

43. An all-purpose jacket is defined as "White kraft bonded to aluminum foil, fiberglass reinforced, pressure sensitive adhesive closure." Id.

44. S&M installed an "all-purpose jacket" in the trenches and manholes, not "calcium silicate pipe insulation, glass cloth or aluminum jacket." Def. App. 511 (Lancto Declaration ¶ 16).

45. The type of insulation that S&M installed is inappropriate for trenches and manholes, which are potentially exposed to the elements. Id.

46. The VA has "located no documentation in the files that shows that S&M was given permission—by the contracting officer or anyone else working for the VA—to install the type of insulation it installed in the trenches." Id.

47. The contracting officer's delegation of authority to Michael Shaughnessy provided that one of Mr. Shaughnessy's duties was "[a]ssuring that changes in work under a contract are not implemented before written authorization or a contract modification is issued by the Contracting Officer." Def. App. 530.

48. The delegation explicitly forbade Mr. Shaughnessy from "[m]aking changes to contract provisions." Def. App. 531.

49. S&M signed an acknowledgment of this delegation. Def. App. 532.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Franklin E. White, Jr.
FRANKLIN E. WHITE, JR.
Assistant Director

s/ Sean B. McNamara
SEAN B. McNAMARA
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L St., NW
Washington, D.C. 20530
Tele: (202) 305-7573
Fax: (202) 514-8624

March 15, 2007

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on this 15th day of March, 2007, a copy of the foregoing "DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. The parties may access this filing through the Court's system.

s/ Sean B. McNamara