No. 06-155C
(Senior Judge Hodges)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

S&M MANAGEMENT INCORPORATED,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

---

EDMUND C. GRAINGER, III

McCullough, Goldberger & Staudt, LLP
1311 Mamaroneck Avenue, Suite 340
White Plains, New York 10605
Telephone No.: (914) 949-6400
Fax No.: (914) 949-3507

October 1, 2007

Attorneys for Plaintiff

## TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... iii

STATEMENT OF ISSUES .......... 2

STATEMENT OF THE CASE .......... 2

STATEMENT OF MATERIAL FACTS .......... 2

1. The New Compensator .......... 4
2. The Alleged Damaged Compensator .......... 5
3. The Installation of a Valve in Manholes 25 .......... 5
4. Installation of Two New Manholes .......... 6
5. Insulation .......... 7

SUMMARY OF THE ARGUMENT .......... 8

ARGUMENT .......... 8

I. Standard for Summary Judgment .......... 8

II. Defendant's Motion for Partial Summary Judgment Must be Denied in its Entirety .......... 9

A. The Contract Must Be Construed Against The United States .......... 9

B. The Provisions Relied Upon by Defendant are Ambiguous .......... 11

1. The New Compensators .......... 12
2. The Damaged Compensator .......... 14
3. The Installation of a Valve in Manhole 25 .......... 15
4. The Two New Manholes .......... 15
5. The Installation of Insulation .......... 17

C. The Defendant's Representatives had the Authority to Approve the Work Performed ........ 17

CONCLUSION ........ 18

## TABLE OF AUTHORITIES

## CASES

A Olympic Forwarder, Inc. v. The United States
33 Fed. Cl. 514 (1995) ........ 8, 9

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986) ........ 9

Apollo Sheet Metal, Inc. v. The United States
44 Fed. Cl. 210 (1994) ........ 14

Franchi Constr. Co. v. United States
609 F. 2d 984 (Ct. Cl. 1979) ........ 13, 14

Hensel Phelps Construction Co. v. United States
886 F. 2d 1296 (U.S. Ct. of App. 1989) ........ 13

H.F. Allen Orchards v. United States
749 F.2d 1571 (Fed. Cir. 1984) ........ 9

HPI/GSA-3C, LLC v. Perry
364 F.3d 1327 (Fed. Cir. 2004) ........ 10

Jay v. Secretary, DHHS
998 F.2d 979 (Fed. Cir. 1993) ........ 9

L. Roseman Corp. v. United States
390 F.2d 711, 182 Ct. Cl. 586 (1986) ........ 10

Litton Indus. Products, Inc. v. Solid State Sys. Corp.
755 F.2d 158 (Fed. Cir. 1985) ........ 9

Matsushita Elec. Indust. Co. v. Zenith Radio Corp.
475 U.S.574, 106 S. Ct. 1356, 89 L.Ed2d 538 (1986) ........ 9

Merit v. United States
95 Ct. Cl. 421 (1942) ........ 10

Peter Kiewit Sons' Co. v. United States
109 Ct. Cl. 390 (1947) ........ 10

Record Steel and Construction, Inc. v. United States
62 Fed. Cl. 508 (2004) ..... 10

United Pacific Insurance Company v. The United States
204 Ct. Cl. 938, 204 Ct. Cl. 686, 497 F.2d 1402 (1974) ..... 10

William F. Klingenmith, Inc. v. United States ..... 14
505 F.2d 1257 (Ct. CL. 1974)

Wunderlick Contracting Co. v. United States
166 F. Supp. 741, 143 Ct. Cl. 876 (1958) ..... 10

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| S & M MANAGEMENT INCORPORATED | ) | |
| | ) | No. 06-155C |
| Plaintiff, | ) | (Judge Hodges) |
| | ) | |
| V. | ) | |
| | ) | |
| THE UNITED STATES OF AMERICA (DEPARTMENT OF VETERANS AFFAIRS) | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff, S&M Management ("Plaintiff") submits this memorandum of law in opposition to defendant, the United States of America's ("Defendant") motion for partial summary judgment. This case involves a construction contract entered into between Plaintiff and Defendant. Plaintiff performed all of the work under the Contract. In fact, Defendant's own representatives approved Plaintiff's work, and acknowledged that Plaintiff completed all work pursuant to the Contract.

Despite Plaintiff's performance of the contract and Defendant's own representative approving the work performed, Defendant withheld from Plaintiff a contract balance in excess of $78,000, claiming certain deficiencies in Plaintiff's work. These claims of deficient work are entirely without merit. Moreover, as set forth more fully below, to the extent that this Court considers whether the Plaintiff performed all of the work of its work pursuant to the Contract, issues of fact exist which prevent this motion from being decided on a motion for summary judgment.

## STATEMENT OF THE ISSUE

Whether summary judgment should be granted in favor of defendant, the United States of America, where the Defendant has withheld payments to a general contractor on the basis that it believes the general contractor did not perform work pursuant to certain contractual provisions, and where general contractor claims that it performed all of the work required under such provisions and that the meaning of the provisions are disputed.

## STATEMENT OF THE CASE

On March 1, 2006 Plaintiff brought this instant action pursuant to the Contracts Disputes Act of 1978, 41 U.S.C. § 601 et seq. This action is timely, in that it was filed within six years of the Defendant's denial of Plaintiff's claim. Plaintiff brings this action to recover funds that it was entitled to pursuant to work that it performed on a project located in Castle Point, New York, and which were wrongfully withheld by the Defendant. Plaintiff seeks judgment in its favor in the amount of at least $78,000, plus CDA interest, attorney's fees and disbursements.

## STATEMENT OF MATERIAL FACTS

On or about September 29, 1999 the Department of Veterans Affairs (the "DVA"), a Department of Defendant, the United States of America, awarded Plaintiff the construction contract numbered V10N3D-067, Project No. 620-98-127 (the "Contract") (See Defendant's Appendix ("Def. App.") 353). Pursuant to the terms of the Contract, Plaintiff agreed to perform certain work for the DVA at the VA Hudson Valley Healthcare System, Castle Point Campus, Castle Point, NY (the "Premises") (Def. App. 99-100).

Such work included, inter alia, the replacement of lateral steam lines at the Premises(Def. App. 99-100).

Defendant acknowledges that it provided Plaintiff with a notice to proceed for a contract amount of $ 598,000, and that this amount was later increased to $ 678,449.89 (Defendant's Brief ("Def. Br.") at page ("pg.") 3). Plaintiff performed all of the work required under the Contract (Declaration of Salvatore Sciascia, sworn to on September 27, 2007 ("Sciascia Decl.") at Exhibit ¶ 2).

Defendant appointed Michael Shaughnessy as the Technical Representative to the subject construction. As the Technical Representative, Mr. Shaughnessy was given numerous powers, including, the express authority to monitor the project and "assure compliance with technical requirements of the contract" (See Def. App. 530). Mr. Shaughnessy was also given the power of "[r]eviewing and approving progress reports, technical reports, drawings and other items required for approval" (Def. App. 530). Throughout the project, and upon completion of the project, either Mr. Shaughnessy or Mr. Douglass Rod, who was also one of Defendant's representatives, inspected and approved the work performed by Plaintiff. (Sciascia Decl. ¶ 2).

In an effort to avoid paying the remaining balance of the Contract, Defendant claimed deficiencies in Plaintiff's work. The alleged deficiencies are 1) missing "compensators" (a type of expansion joint) in places throughout the steam system, 2) repair of a damaged compensator, 3) installation of a valve in one of the manholes, 4) the way in which Plaintiff installed the manholes, and 5) Plaintiff's use of a kind of pipe insulation (See Def. Brief pg. 3).

As explained more fully below, these claims of deficient work are entirely baseless, and even if they did have some merit, issues of fact exist as to whether or not they were required pursuant to the Contract.

The New Compensators

Defendant first argues that Plaintiff was deficient in its performance of the Contract since it did not install new compensators on all of the pipes in manholes 18A, 18B, 18C, 18E, 25 and 25B, as well as a compensator in Building 1 (See Def. Brief pgs. 5-6). Neither the Specifications nor the drawings require that new compensators must be installed where none existed previously.

Section 01010-2 of the Contract clearly sets forth that the work to be performed by Plaintiff was the "... removal of existing steam lines, connections, hangers, etc. and the replacement with new steam lines, connectors, hangers, etc. as depicted on the contract drawings and as described in the Contract Specifications" (Def. App. 100).

Defendant references drawings D1 and D2 in support of its position that expansion joints should have been installed on the pipes in manholes 18A, 18B, 18C, 18E, 25 and 25B (Def. App. pgs. 505-06, 509). These drawings, however, specifically state that "Manhole" configurations may not be precise and are intended to depict the general arrangement of piping, valves, connections, etc. On-site inspection of each manhole is recommended to determine location and condition of steam system elements" (Def. App. pgs. 505-06, 509). Defendant acknowledges that the compensator it believes should have been installed in Building 1 "was not shown on a drawing" (See Def. Br. pg. 6).

There was an on-site inspection for the location of the existing steam system elements (See Def. App. pg. 379). During such inspection, there were no compensators existing in any of the aforesaid manholes (See Def. App. pg. 379). Moreover, Mr. Shaughnessy inspected and approved the work as performed, and agreed that no compensators were required where none existed (Sciascia Decl. ¶ 3) (Def. App. pg. 379).

The Alleged Damaged Compensator

Defendant also alleges that a Compensator in Manhole 18C was damaged during installation. In support of this allegation, Defendant cites an internal memorandum and the declaration of one of the DVA's representatives, Jud F. Lancto.

Plaintiff denies Defendant's allegation that it damaged Manhole 18C in its entirety (See Sciascia Decl. ¶ 4).

The Installation of a Valve in Manhole 25

The Defendant also claims that, pursuant to the Contract, Plaintiff was required to install a valve in Manhole 25 and that it failed to do so (Def. Br. pgs. 7-8, 18-19). Defendant bases this claim on the drawing for Manhole 25, stating that "[t]he drawing for Manhole 25 shows two new steam lines exiting the manhole in the direction of Manhole 25B" (Def. Br. pg. 18).

Despite this assertion, there is no missing valve in Manhole 25. Manhole 25 is located on the main trunk line, and there was an existing valve on the main trunk line . The construction did not include any work to be performed on the main trunk, which was previously replaced (Def. App. 362, 379). The Specifications required Plaintiff to hook into the existing equipment on the main trunk line and did not require the replacement of

any work on the main line (Def. App. 379). Neither the Contract, nor the drawings required any replacement work on the main trunk line (Def. App. pg. 379). Section 02710-18 simply requires that Plaintiff's work is connected to the existing work in a neat and workmanlike manner (Def. App. 299, 379). Moreover, at the time that the project was complete, the main trunk line was fully operating (Sciascia Decl. ¶ 5).

Additionally, Mr. Shaughnessy and/or Mr. Rod inspected and approved the work performed on Manhole 25 (Sciascia Decl. ¶ 5) (Def. App. 361, 379).

Installation of Two New Manholes

Defendant also claims that under the Contract, Plaintiff was required to install two new manholes – 18B and 18E, and that by failing to install a waterproof membrane on manholes 18B or 18E, Plaintiff breached the Contract (Def. Br. 8-9, 19-20). Defendant states that the VA "has located no documentation in the files that shows that S&M was given permission – by the contracting officer or anyone else working for the VA – not to install waterproofing on these manholes" (See Def. Br. pg. 8).

Plaintiff installed the manholes with the express consent and approval of Defendant's representative, Douglass Rod (Sciascia Decl. ¶ 7). The facts that a joint existed between the two halves of the manholes, and the piping and sleeves were approximately two feet from the interior floor of the manholes, had to be specifically taken into account when setting the depth of the manholes (Def. App. 362, 380). The manholes were therefore set at a depth as to avoid the potential for leaking (Def. App. 362, 380).

Cut sheets were provided to Defendant, and on July 17, 2007, Defendant's representative, Douglass Rod, signed off on these cut sheets as "approved" (See

Sciascia Decl. ¶ 7 and at Exhibit A). These cut sheets set forth the exact way in which these manholes would be installed, and the manholes were installed in exact adherence to the cut sheets (Sciascia Decl. ¶ 8). The cut sheets do not include waterproof membranes, which Defendant argues Plaintiff was required to install (Sciascia Decl. ¶ 7). Moreover, once the subject manholes were installed, they were approved by Defendant's representative, Mr. Shaughnessy (Sciascia Decl. ¶ 8).

Defendant also makes the hollow assertion that the tops of the manholes do not sit flush with the ground, and that even though there is no requirement under the contract that the manholes be installed in such a manner, common trade practices dictates such an installation (Def. Br. pg. 9). While Defendant clearly acknowledges that this would not constitute a breach of the Contract, Plaintiff denies that the manholes were not installed properly (Sciascia Decl. ¶ 9).

Insulation

Defendant further claims that Plaintiff did not install the right kind of insulation covering the pipes in the manholes and trenches (Def. Br. pgs. 9-10, 21). Defendant seems to argue that, since trenches and manholes are "potentially exposed to the elements," the insulation used by Plaintiff is inappropriate (Def. Br. pg. 21). Defendant further claims that, pursuant to Section 02710-23, the piping in the trenches and manholes must be insulated with "calcium silicate pipe insulation, glass cloth, or aluminum jacket" (Def. Br. pg. 21).

Section 15250 of the Specifications, which is entitled "Insulation," does not define any indoor or outdoor classification (Def. App. 339). Section 02710-17 through 02710-18 of the Specifications deals with Insulation Materials (Def. App. 298-99). The DVA

provided and approved for use, pursuant to Section 02710-18 of the Specifications, "white Kraft paper bonded to aluminum foil, fiberglass reinforced, pressure sensitive adhesive closure" (Def. App. 299). Therefore, this is precisely what Plaintiff used as the insulation materials covering the pipes in the manholes and trenches. The material used for insulation was inspected, and was approved for payment pursuant to Section 15250-3 of the Specifications (Def. App. 380).

In addition, the type of insulation used was expressly approved by the Mr. Shaughnessy and/or Mr. Rod (Sciascia Decl. ¶ 10) (Def. App. 380).

## SUMMARY OF THE ARGUMENT

Plaintiff performed all of its work pursuant to the Contract, and the Defendant has wrongly withheld the Contract balance. Mr. Shaughnessy and/or Mr. Rod, defendant's own representatives, inspected and approved Plaintiff's work, finding that it complied with all of the Contract's requirements.

Notwithstanding, to the extent that the meaning of the subject provisions of the Contract are in dispute, as is whether or not Plaintiff has performed all of its requirements under the Contract, issues of fact remain which preclude summary judgment at this time.

## ARGUMENT

### I. Standard for Summary Judgment

Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. RCFC 56(c); A Olympic Forwarder, Inc. v. The United States, 33 Fed.Cl. 514, 518 (1995) ("Olympic Forwarder"). Any doubts involving factual issues must be resolved in favor of

the non-moving party, to whom the benefit of all presumptions and inferences run. Olympic Forwarder, 33 Fed.Cl. at 518 citing Matsushita Elec. Indust. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), cert. denied, 481 U.S. 1029, 107 S.Ct. 1955, 95 L.Ed.2d 527 (1987); Litton Indus. Products, Inc. v. Solid State Sys. Corp., 755 F.2d 158, 163 (Fed.Cir. 1985) ("Matshushita"); Jay v. Secretary, DHHS, 998 F.2d 979 (Fed.Cir. 1993) ("Jay"); H.F. Allen Orchards v United States, 749 F.2d 1571, 1574 (Fed.Cir. 1984), cert. denied, 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985).

The movant bears the burden of demonstrating absence of all genuine issues of material fact. Jay, 998 F.2d at 982 citing Matshushita, 775 F.2d at 1116. No genuine issue of material fact exists where "the evidence presented is insufficient to permit a reasonable factfinder to find in favor of the nonmoving party." Jay, 998 F.2d at 982 citing Anderson v. Libety Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) ("Anderson"). All "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are … not those of a judge … The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Jay, 998 F.2d at 982 citing Anderson, 477 U.S. at 251-52, 106 S.Ct. at 2512. Essentially, this Court's inquiry is "whether the evidence presents a sufficient disagreement of fact to require submission to the factfinder or whether it is 'so one-sided that one party must prevail as a matter of law." Jay, 998 F.2d at 982 citing Anderson, 477 U.S. at 251-52, 106 S.Ct. at 2512.

## II. Defendant's Motion for Partial Summary Judgment Must be Denied in its Entirety

### A. The Contract Must be Construed Against The United States

Where a drawing or specification is ambiguous, and the contractor follows a reasonable interpretation of such drawing or specification, the contractor's interpretation will prevail over one advanced by the Government, even where the Government's interpretation may be a more reasonable one, since the Government drafted the contract. United Pacific Insurance Company v. The United States, 204 Ct.Cl. 938, 204 Ct.Cl. 686, 497 F.2d 1402, 1407 (1974) ("United Pacific") citing Peter Kiewit Sons' Co. v. United States, 109 Ct. Cl. 390 (1947). Where the government is the drafter of a contract, it has "a duty to shoulder the major task of seeing within a zone of reason that words of the contract correctly and concisely communicated the proper notions and intentions of the parties, and the Government must bear the burden of a failure to carry that responsibility." United Pacific, 204 Ct.Cl. at 938, 204 Ct.Cl. at 686, 497 F.2d at 1407, citing L. Rosenman Corp. v. United States, 390 F.2d 711, 182 Ct.Cl. 586 (1968). Thus, where the government is the drafter of the contract, any ambiguities should be strictly construed against the government. United Pacific, 204 Ct.Cl. at 938, 204 Ct.Cl. at 686, 497 F.2d at 1407 citing Merit v. United States, 95 Ct.Cl. 421 (1942); Wunderlick Contracting Co. v. United States, 166 F.Supp. 741, 143 Ct.Cl. 876 (1958).

The rule of *contra proferentem*, which requires that all ambiguities be construed against the drafter, is to be applied when there are competing interpretations of ambiguous contract language. Record Steel and Construction, Inc. v. United States, 62 Fed.Cl. 508, 518 (2004) ("Record Steel") citing HPI/GSA-3C, LLC v. Perry, 364 F.3d 1327, 1334 (Fed.Cir. 2004) ("HPI/GSA-3C"). The essential ingredients of this rule are "1) that the contract specifications were drawn by the Government, 2) that language was used therein which is susceptible of more than one interpretation; 3) that the

intention of the parties does not otherwise appear; and 4) that the contractor actually and reasonably construed the specifications in accordance with one of the meanings of which the language was susceptible. Record Steel, 62 Fed. Cl. at 518 citing HPI/GSA-3C, 364 F.3d at 1334.

The sole exception to the rule of *contra proferentem* is the patent ambiguity doctrine. Under this doctrine, ambiguities may be construed against the contractor if the ambiguities are "so patent and glaring that it is unreasonable for a contractor not to discover and inquire about them." Record Steel, 62 Fed.Cl. at 518 quoting Triax Pac., Inc. v. West, 130 F.3d 1469, 1475 (Fed. Cir. 1997) ("Triax") (internal quotations omitted). "The Federal Circuit has not given the [patent ambiguity] doctrine broad application ... [b]ecause the doctrine has the effect of relieving the government from the consequences of its own poorly drafted contracts." Record Steel, 62 Fed.Cl. at 518 quoting Triax Pac., Inc. v. West, 130 F.3d 1469, 1475 (Fed. Cir. 1997) ("Triax") (internal quotations omitted). Where an ambiguity is not so patent and glaring to trigger the patent ambiguity doctrine, it is considered latent, and the *contra proferentem* rule applies. Record Steel, 62 Fed.Cl. at 518 quoting Triax Pac., Inc. v. West, 130 F.3d 1469, 1475 (Fed. Cir. 1997) ("Triax") (internal quotations omitted).

In this case, Plaintiff performed all of the work required pursuant to the Contract. To the extent, however, that this Court finds the language of the Contract unclear, all ambiguities relating to the language of the Contract must be construed in favor of the Plaintiff.

B. The Provisions Relied Upon by Defendant are Ambiguous

In this instant motion, the Defendant argues that the terms of the Contract are clear and unambiguous, and that Plaintiff did not perform all that was required pursuant to the clear and unambiguous language of the Contract. There are five disputed areas of the Contract which the Defendant relies on specifically.

Plaintiff will prove at trial that it did indeed perform all that was required pursuant to each of these "disputed" areas of the Contract. Defendant's motion must be denied, since the Contract provisions that it relies upon are ambiguous. Since these ambiguities are not so patent or glaring as to trigger the patent ambiguity exception, the *contra proferentem* rule applies, whereby all ambiguities must be construed against the drafter. Record Steel, 62 Fed. Cl. at 518 citing HPI/GSA-3C, 364 F.3d at 1334.

1. The New Compensators

First, Defendant argues that Plaintiff was deficient in its performance of the Contract, in that Plaintiff did not install new compensators on all of the pipes in manholes 18A, 18B, 18C, 18E, 25 and 25B, as well as a new compensator in Building 1.

According to Section 01010-2 of the Contract, which was relied upon by Plaintiff, the work to be performed by Plaintiff involved the "... removal of existing steam lines, connections, hangers, etc. and the replacement with new steam lines, connectors, hangers, etc. as depicted on the contract drawings and as described in the Contract Specifications" (Def. App. 100). Thus, the Contract required only the removal and replacement of steam lines and connectors – not the installation of new compensators.

Defendant acknowledges that the specifications "do not provide specific detail regarding the location or quantity of expansion joints" (Def. Br. pg. 14). The Defendant,

however, relying solely on the drawings, argues that the drawings show the installation of new expansion joints on all of the pipes in manholes 18A, 18B, 18C, 18E, 25 and 25B. Defendant admits that the drawings do not depict a new compensator in Building 1.

Plaintiff does not agree that the drawings depict the installation of new compensators on the pipes in the aforesaid manholes. Such a reading of the drawings would directly contradict the clear language of the specifications, which only involve the removal and replacement of steam lines and connectors, and not the installation of new compensators. Moreover, the drawings themselves reveal that they are imprecise, as they state that "[m]anhole configurations may not be precise, and are intended to depict the general arrangement of piping, valves, connections, etc. On-site inspection of each manhole is recommended to determine locations and conditions of steam system elements." (Def. App. 379, 505-06).

Defendant makes much of the "like effect" clause, which states that if something is mentioned in the specifications and not the drawings, or vice versa, "such item shall be of like effect as if shown or mentioned in both." (Def. App. 76). Defendant, however, ignores the following sentence, which contains the following precedence clause: "[i]n case of difference between drawings and specifications, the specifications shall govern." (Def. App. 76). "[W]hen the requirements of the specifications of a government contract conflict with the drawings and the contract contains an order of precedence clause, the specifications shall control as the order of precedence provides." Hensel Phelps Construction Co. v. United States, 886 F.2d 1296, 1298 (U.S. Ct. of App. 1989) ("Hensel") citing Franchi Constr. Co. v. United States, 609 F.2d 984, 989-90 (Ct. Cl.

1979) ("Franchi"); William F. Klingenmith, Inc. v. United States, 505 F.2d 1257, 1261 (Ct. Cl. 1974); see also Apollo Sheet Metal, Inc. v. The United States, 44 Fed. Cl. 210, 213 (1994). Even where there is a patent discrepancy between the specifications and the drawings, the order of precedence clause can be relied upon to resolve such discrepancy. Hensel, 886 F.2d at 1299 citing Franchi, 609 F.2d at 985-86.

In this case, there is no patent discrepancy, since the Specifications clearly required only the removal and replacement of steam lines and connectors as opposed to the installation of new compensators. Even if, however, the drawings somehow gave rise to such a patent discrepancy, the order of precedence clause would resolve this discrepancy in favor of the Specifications.

Additionally, after an on-site inspection took place, Defendant's own representative, Mr. Shaughnessy agreed with Plaintiff's interpretation that no compensators were required where none existed (Def. App. 379).

Based upon the foregoing, and when construing all ambiguities against the drafter of the Contract, the Plaintiff was not deficient in its performance of the Contract in relation to the installation of compensators. At the very least, ambiguities exist which would prevent Defendant's motion for summary judgment from being granted.

2. The Damaged Compensator

Next, Defendant argues that Plaintiff damaged a compensator in Manhole 18C during the installation. In support of this argument, Defendant relies upon an internal memorandum and a declaration of one of its representatives (Def. Br. 17-18). Defendant denies this allegation in its entirety (Sciascia Decl. ¶ 4). Clearly, this involves a factual dispute which cannot be resolved in a motion for summary judgment.

3. The Installation of a Valve in Manhole 25

Defendant further argues that Plaintiff was required to install a valve in Manhole 25, and that it did not do so. Defendant relies on the drawing for Manhole 25.

Manhole 25 is on the main trunk line, which contains an existing valve (Def. App. 362, 379). Therefore, no valve is missing from it. The main trunk line was previously replaced, and neither the Specifications, nor the drawings require any replacement work on the main trunk line (Def. App. 379). Plaintiff was simply required to hook into the existing equipment on the main trunk line and was not required to perform any replacement work (Def. App. 379). Once again, Defendant's representative, Mr. Shaughnessy and/or Mr. Rod, agreed with Plaintiff's interpretation of the Contract, as such representative inspected and approved the work performed (Sciascia Decl. ¶ 5). (Def. App. 361, 379).

While it is clear that Plaintiff performed all of the required work in relation to Manhole 25, to the extent that any ambiguity exists within the Contract, such ambiguity cannot be reconciled during this instant motion.

4. The Two New Manholes

The next argument put forth by Defendant is that Plaintiff improperly installed manholes 18B and 18E. Defendant argues that 1) Plaintiff was required to place a waterproof membrane between the mud slab and bottom concrete slab, and continue up the side of the walls" and failed to do so, and 2) the manholes were not installed properly, as they do not sit flush with the ground.

As stated above, the manholes were installed with the express consent and approval of Defendant's representative, Douglass Rod. The cut sheets which were

used when installing these manholes set forth a way in which the manholes could be installed at a depth to avoid potential leaking (Def. App. 362, 380). Thus, Douglass Rod expressly signed off on these cut sheets as approved (Sciascia Decl. at Ex. A). The cut sheets did not include the waterproof membranes that Defendant argues were required, and upon completion, the manholes were ultimately inspected and approved by Mr. Shaughnessy (Def. App. 362, 380). Since the Defendant's the Technical Representative was given the power of "[r]eviewing and approving progress reports, technical reports, drawings and other items required for approval," and he approved the work upon completion, the work has been accepted by the Defendant (Def. App. 530).

As to the Defendant's argument that the manholes do not sit flush with the ground, the Defendant admits that "[t]he contract contains no specific requirement that manholes be installed in such a manner." (Def. Br. pg. 20). Defendant somehow argues that Plaintiff's installation of the manholes is not in conformity with common trade practice, and that this supports its motion for summary judgment. Such an argument merely exposes the frivolity of this motion.

Plaintiff denies the allegation that it installed these manholes improperly (Sciascia Decl. ¶ 9). There is no doubt that the manner in which the manholes were installed, involves an issue of fact which certainly cannot be decided upon by this motion. Defendant's claim that "trade practice renders the contract unambiguous" is patently absurd. Since the Defendant has not even alleged that the Plaintiff's installation of the manholes was in breach of any contractual provision, and Plaintiff has denied that it had improperly installed the manholes, this issue cannot possibly be decided on a motion for summary judgment. Moreover, as stated above, Defendant's

own representatives approved the cut sheets for these manholes, and approved their installation.

5. The Installation of Insulation

Next, the Defendant makes the claim that Plaintiff did not install the proper insulation covering the pipes in both the manholes and trenches. Defendant's argument that calcium silicate pipe insulation, glass cloth or aluminum jacket must be used for trenches and manholes,

Defendant seems to argue that the manholes and trenches are potentially exposed to the elements, and therefore "calcium silicate pipe insulation" with a "glass cloth or aluminum jacket" is required (Def. Br. pg. 21). As stated above, Section 15250 does not define any indoor or outdoor classification of insulation (Def. App. 339). The Plaintiff used "white Kraft paper bonded to aluminum foil, fiberglass reinforce, pressure sensitive adhesive closure" as insulation, pursuant to Section 02710-18. This insulation was specifically provided and approved for use by the DVA (Def. App. 380).

Therefore, the insulation was used pursuant to the explicit terms of the Contract, and with the express approval of Defendant's representative. To the extent that there is any ambiguity in the Contract as to which insulation was to be used, any such ambiguity must be resolved against Defendant. Record Steel, 62 Fed. Cl. at 518 citing HPI/GSA-3C, 364 F.3d at 1334.

C. The Defendant's Representatives had the Authority to Approve the Work Performed

As stated above, both Mr. Shaughnessy and Mr. Rod were involved in approving the work performed by the Plaintiff. While the November 9, 1999 Memorandum does place some limitations on Mr. Shaughnessy, it does not place any limitations on Mr.

Rod, or upon any other representative of Defendant. Moreover, pursuant to the November 9, 1999 Memorandum , Mr. Shaughnessy was given the authority to review and approve "progress reports, technical reports, drawings and other items required for approval" (Def. App. 530).

In addition, although the November 9, 1999 Memorandum of the DVA does state that it "will remain in effect throughout the contract life unless sooner revoked in writing by the Contracting Officer or by your reassignment," it does not state the terms of the Memorandum cannot be orally modified.

Throughout the project, either Mr. Shaughnessy or another one of Defendant's representatives approved the work performed. To the extent that Defendant's representatives repeatedly accepted such work, there was clearly an understanding between Plaintiff and Shaughnessy and/or any other representative that accepted the work performed, that such representative was authorized to accept this work.

Moreover, the Defendant continued to pay for the work already performed throughout the project, thereby accepting such work (Sciascia Decl. ¶ 1). Much of the work that the Defendant now deems deficient was previously accepted <u>and paid for</u> by Defendant (Sciascia Decl. ¶ 1).

## <u>Conclusion</u>

Based upon the foregoing, issues of fact regarding the meaning of the disputed Contract terms remain. Therefore, Defendant's motion for summary judgment must be denied in its entirety.

Dated: White Plains, New York
October 1, 2007

McCULLOUGH, GOLDBERGER & STAUDT, LLP

By: ______________________________
Edmund C. Grainger, III (EG-8019)
Attorneys for Plaintiff, S&M Construction
1311 Mamaroneck Avenue – Suite 340
White Plains, New York 10605
(914) 949-6400

CERTIFICATE OF SERVICE AND FILING

I hereby certify that on this 1st day of October, 2007, a copy of the foregoing "PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT " was filed electronically. I understand that notice of this filing will be sent to all parties via the Court's electronic filing system. The parties may access this filing through the Court's system. The "PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT" was additionally served upon counsel for defendant, via regular mail at the following address:

Sean B. McNamara, Esq.
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L St., NW
Washington, D.C. 20530

s/ Edmund C. Grainger, III