IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| S&M MANAGEMENT INCORPORATED,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 06-155C<br>(Senior Judge Hodges) |

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to Rule 7 of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully submits this reply to plaintiff S&M Management's ("S&M") response to our motion for partial summary judgment. S&M's opposition to our motion is wholly without merit. The conclusory statements upon which S&M relies do not create any genuine issues of material fact that preclude partial summary judgment, and, upon the merits, S&M offers only unsupported and unreasonable interpretations of the contract. Accordingly, the Court should grant our motion.

## ARGUMENT

### I. Partial Summary Judgment Is Appropriate At This Time Because S&M Fails To Show An Evidentiary Conflict On The Record

S&M asserts that our motion should be denied because "issues of fact remain which preclude summary judgment at this time." Pl. Res. 8. S&M is correct that we bear the burden here of showing that no genuine issues of material fact preclude partial summary judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). S&M fails to grasp, however, that rhetoric alone cannot create genuine issues of fact. As we noted in our moving brief, the party opposing summary judgment must show an evidentiary conflict on the record. American Airlines, Inc. v.

United States, 204 F.3d 1103, 1112 (Fed. Cir. 2000). Factually unsupported argument is insufficient to defeat a motion for summary judgment. Id. Instead, a party must offer "an evidentiary conflict created on the record at least by a counter statement of fact or facts set forth in detail." Processed Plastics Co. v. United States, 473 F.3d 1164, 1170 (Fed. Cir. 2006). Moreover, the Court should not accept conclusory legal conclusions couched as allegations of fact. See Gant v. United States, 417 F.3d 1328, 1331 (Fed. Cir. 2005). In its response to our motion, S&M proffers nothing more than the conclusory statements — many of them concerning legal rather than factual issues — of its President, Mr. Sciascia. As we demonstrate more fully below, these statements do not constitute sufficient evidence to create any genuine issues of material fact. Accordingly, the Court should grant our motion for partial summary judgment.

## II. S&M Fails To Demonstrate Any Evidentiary Conflicts Or Offer Any Reasonable Interpretations Of The Contract

### A. S&M Was Required To Install All Depicted Compensators

S&M first disputes our argument that it was required to install compensators in six of the manholes and one of the buildings covered by the contract. Pl. Res. 12-14. S&M's argument is groundless.

In our moving brief, we noted that the rectangles and trapezoids in six of the manholes on the contract drawings represent expansion joints. Def. Mot. 14-15. We also noted that, while no drawing shows an expansion joint in Building 1, such a joint is necessary to make the system function. Def. Mot. 15. Crucially, S&M does not dispute these facts, either in its response or in Mr. Sciascia's declaration. Instead, S&M claims that the drawings are trumped by the specifications, that the drawings are "imprecise," and that "ambiguities" prevent summary judgment. Pl. Res. 13-14. In his declaration, Mr. Sciascia admits that S&M did not install compensators in the relevant manholes, averring simply that "S&M Management was not

required to install new compensators where none previously existed." Sciascia Decl. ¶ 3.

S&M's argument is flawed for four reasons. First, no genuine factual dispute exists here that S&M did not install compensators in the manholes or in Building 1. Mr. Sciascia's bare assessment of S&M's contractual obligations hardly creates an issue of fact. See Gant, 417 F.3d at 1331 (noting that courts "are not bound to accept as true a legal conclusion couched as a factual allegation."). Accordingly, the only issue before the Court is whether the contract legally required S&M to install compensators. This contract interpretation issue is ripe for summary judgment. See Neal & Co. v. United States, 945 F.2d 385, 390 (Fed. Cir. 1991).

Second, S&M's assertion that the specifications somehow trump the drawings is unfounded. S&M continues to rely upon and misread a single sentence in the introduction to the specifications. See Pl. Res. 12. This sentence requires the "replacement" of existing "steam lines, connectors, hangers, etc.," but it qualifies this requirement with "new steam lines, connections, hangers, etc., as depicted on the Contract drawings and as described in the Contract specifications." Def. App. 100. As we noted in our moving brief, S&M takes the "replacement" language out of context, ignoring the contract as a whole. Def. Mot. 16. S&M fails to respond meaningfully to our argument. Instead, S&M claims that the specifications differ from and supercede the drawings because of the contract's precedence clause. Pl. Res. 13. This argument is wholly groundless. Our reading of the contract demonstrates that the specifications refer to and complement the drawings; S&M's reading negates the drawings because if all S&M needed to do was replace existing work, the drawings would be superfluous. Because S&M reads the drawings out of the contract, its interpretation is unreasonable, and this Court should reject it. See Gardiner, Kamya & Associates, P.C. v. Jackson, 467 F.3d 1348, 1353 (Fed. Cir. 2006) (contract must be read as a whole).

S&M's argument concerning the disclaimer present on the drawings is no more persuasive. This disclaimer states that: "Manhole configurations may not be precise, and are intended to depict the general arrangement of piping, valves, connections, etc. On-site inspection of each manhole is recommended to determine locations and conditions of system elements." Def. App. 379, 505-06. We noted in our moving brief that the language of this disclaimer, which merely "recommend[s]" an inspection of the manholes, did not absolve S&M of its obligation to install compensators as depicted on the drawings. Def. Mot. 17. S&M fails even to address our argument, let alone refute it.

Finally, S&M claims, without elaboration, that "ambiguities exist which would prevent Defendant's motion for summary judgment from being granted." Pl. Res. 14. As we noted in our moving brief, a contract contains an ambiguity only if its terms are susceptible to more than one reasonable interpretation. Metric Constructors, Inc., v. NASA, 169 F.3d 747, 751 (Fed. Cir. 1999). This contract is unambiguous because the plain language of this contract requires the installation of compensators. Even if the contract is somehow ambiguous, S&M's reading of the contract is unreasonable. S&M does not reasonably dispute that the contract required compensators in the relevant locations — instead, S&M unreasonably contends that the contract required only the replacement of existing steam lines, reading the drawings out of the contract. Because S&M fails to offer a reasonable interpretation of the contract, it fails to show that the contract is ambiguous, or that its reading of the contract is appropriate. Accordingly, summary judgment in our favor is appropriate.

**B. S&M Was Required To Repair The Damaged Compensator**

S&M challenges our argument that it damaged and failed to repair a compensator in Manhole 18C. Pl. Res. 14. S&M relies exclusively upon a statement in Mr. Sciascia's

declaration that "S&M did not at any time damage such compensator" and that our allegation to the contrary is "patently false." Id. (citing Sciascia Decl. ¶ 4).

Mr. Sciascia's conclusory statement does not create a genuine issue of fact. In support of our motion, we offered a detailed statement from supervisory VA engineer Jud Lancto that S&M gouged the compensator when it was grinding pipe in the manhole. Def. Mot. 17-18 (citing Lancto Decl. ¶ 11). We also noted that S&M had previously represented that it had repaired the compensator "in accordance with the manufacturer's recommendation." Def. Mot. 18 (citing Def. App. 380). In addition to the letter from S&M that we cited in our motion, another letter from S&M in our appendix also refers to the damaged compensator. This letter states that the "scratch on the compensator was referred to the manufacturer. Repair was made in accordance with the manufacturer's recommendation." Def. App. 363. S&M's previous admission that the compensator was damaged, coupled with Mr. Lancto's representation to that effect, belie Mr. Sciascia's allegation that S&M did not damage the compensator. Summary judgment in our favor is thus appropriate upon this issue.

**C. S&M Was Required To Install A Valve In Manhole 25**

S&M asserts that it properly completed work in Manhole 25, claiming that it was not required to install a valve in Manhole 25 because "[m]anhole 25 is on the main trunk line, which contains an existing valve." Pl. Res. 15. S&M asserts that "neither the Specifications, nor the drawings require any replacement work on the main trunk line." Id. Instead, S&M was "simply required to hook into the existing equipment on the main trunk line and was not required to perform any replacement work." Id. In his declaration, Mr. Sciascia offers only three sentences concerning Manhole 25:

> S&M Management performed all work necessary under the Contract in relation to Manhole 25, and did so in a neat and

> workmanlike manner. Such work was inspected and ultimately accepted by Mr. Shaughnessey and/or Mr. Rod. In addition the main trunk line was fully operating at the time the project was complete.

Sciascia Decl. ¶ 5.

S&M again fails to respond to the argument we presented in our motion for partial summary judgment. In our moving brief, we noted that the drawing for Manhole 25 shows two new steam lines exiting the manhole in the direction of Manhole 25B. Def. Mot. 18-19 (citing Def. App. 505). As we made clear, this drawing has two consequences. First, the drawing shows a new valve present on the line exiting the manhole. The valve existed on the main trunk line, but it also existed on the new lines, and S&M was accordingly required by the contract to replace it. See Def. Mot. 19.

Second, regardless of whether S&M was required to install a valve in Manhole 25, S&M was certainly required to run new pipe all the way to the main trunk line. S&M did not do this; instead, it terminated its piping outside the manhole, in the trench. Def. Mot. 19 (citing Lancto Decl. ¶ 12). S&M fails to explain how its work complied with the contract's requirements both to install new piping and to connect its work to existing work in an appropriate fashion. Accordingly, the Court should grant summary judgment in our favor upon this issue.

**D. S&M Improperly Installed Two Manholes**

In opposing our arguments on this issue, S&M maintains that it properly installed the two manholes. Pl. Res. 15-17. S&M's argument is unsupported and meritless.

In his declaration, Mr. Lancto explained in detail how S&M improperly installed the manholes. Def. App. 510-11. First, Mr. Lancto noted that S&M installed the manholes in a manner that caused them to protrude above ground, contrary to common trade practice. Id. In support of his assertion, Mr. Lancto provided a picture of the two exposed manholes, which we

then referenced in our motion. Def. App. 529 (Exhibit I to Lancto Declaration). Mr. Lancto also noted that S&M failed to install exterior waterproofing on the manholes as required by the contract. Def. App. 511.

In response, Mr. Sciascia, president of S&M, states that our argument is "patently false" and claims instead that the "manholes were indeed installed properly, and were approved by the United States' representatives." Sciascia Decl. ¶ 9. According to S&M, Mr. Sciascia's bare denial of our detailed allegations creates "an issue of fact which certainly cannot be decided upon by this motion." Pl. Mot. 16. Again, Mr. Sciascia's abbreviated denial is insufficient to create a genuine issue of fact. Mr. Lancto provided a well-supported factual explanation of S&M's failure to adhere to the contract's requirements. S&M itself previously admitted that it installed the manholes in a manner causing them to sit above the ground; S&M claimed that Mr. Shaughnessy stated that landscaping could be used to cover the mistake. App. 362. Accordingly, no issue of fact exists here, and this issue can be resolved through summary judgment.

Although S&M ignores our argument regarding the contract's requirement for a waterproof barrier, S&M contends it had no contractual obligation to install the manholes flush with the ground. Pl. Mot. 16. As we established in our moving brief, no reasonable contractor would install manholes in the manner that S&M did. Def. Mot. 20 (citing Lancto Decl. ¶ 14). S&M does not even attempt to rebut this point. The Court should thus grant summary judgment upon this issue in our favor.

**E. <u>S&M Installed Non-Conforming Insulation</u>**

S&M asserts that it installed the appropriate insulation on the steam system's pipes located in trenches and manholes. Pl. Res. 17. S&M admits that it installed "white Kraft paper

bonded to aluminum foil, fiberglass reinforce, pressure sensitive adhesive closure" as insulation. Id. This insulation was appropriate, S&M argues, because the contract does not "define any indoor or outdoor classification of insulation." Id.

S&M's response flatly ignores the argument we advanced in our motion for partial summary judgment. We argued that "[i]n both trenches and manholes, 'calcium silicate pipe insulation, glass cloth or aluminum jacket' is required" pursuant to the plain language of the contract. Def. Mot. 21 (citing Def. App. 304). We noted that the type of all-purpose jacket installed by S&M was appropriate for "[e]xposed piping in walk-through tunnels," but not trenches and manholes. Def. Mot. 21. S&M's admitted use of "white Kraft paper" insulation plainly violated the unambiguous terms of the contract. Summary judgment in our favor is thus appropriate upon this issue.

**III. As A Matter Of Law, The Contracting Officer's Technical Representative Could Not Approve Changes To The Contract**

Finally, S&M reiterates that its various failures to comply with the requirements of its contract were inspected and approved by Michael Shaughnessy, the project's resident engineer, or by a VA employee named Michael Rods. This argument ignores the requirements of the contract and is without merit.

In support of our motion for partial summary judgment, we relied upon a written delegation of authority to Mr. Shaughnessy. S&M now attempts to use that delegation for its own benefit, arguing: (1) that the delegation letter does not concern Mr. Rods; (2) that the delegation letter gave Mr. Shaughnessy the power to approve "progress reports, technical reports, drawings and other items required for approval"; and (3) that the delegation letter says nothing about oral modification. Pl. Res. 17-18.

S&M is correct that the delegation of authority does not reference Mr. Rods. S&M is

also correct that the delegation does not contain a clause forbidding oral modification. The delegation letter may be silent upon these issues, but the contract is not. Indeed, the contract spells out explicitly, in two clauses, how authority resides with and may be delegated from the contracting officer. Def. App. 88, 98. One of these clauses notes that a designation of authority "will be in writing and will define the scope and limitation of the designee's authority," a restriction that forbids the sort of oral delegation S&M claims was bestowed upon Mr. Rods. Def. App. 98. The other clause notes that the resident engineer may, within "the limits of any specific authority delegated by the contracting officer," by written direction, make changes in the work. Def. App. 88. We have located no directions for changes, and S&M has offered none.

Given that the delegation explicitly forbade Mr. Shaughnessy — the only person delegated any authority by the contracting officer — to make changes in the work, S&M's argument that its failures were ratified by the agency is baseless. See Def. App. 531; see also Winter v. Cath-dr/Balti Join Venture, 497 F.3d 1339, 1344-48 (Fed. Cir. 2007) (holding that changes approved by a contracting officer's representative did not bind the Government where a contract and a delegation of authority expressly conferred the authority to issue changes upon the contracting officer alone); Design and Production, Inc. v. United States, 18 Cl. Ct. 168, 205-08 (1989). The "approval" of Mr. Shaughnessy or Mr. Rods was subject always to the requirements of the contract — neither possessed the power to change those requirements. See Def. App. 98, 531. To the extent that S&M sought a modification of the contract, S&M was required to obtain the permission of the contracting officer for such a change. See Def. App. 78 (contract's changes clause). In this vein, if the manhole cut sheet approved by Mr. Rods represented a change in the contract, Mr. Rods lacked authority to make that change.

Finally, S&M also argues that "there was clearly an understanding between Plaintiff and

Shaughnessy and/or any other representative that accepted the work performed, that such representative was authorized to accept this work." If S&M is arguing that Mr. Shaughnessy possessed apparent authority to make changes in the contract, such an argument is groundless, because Government agents may bind the Government only if they possess actual authority. CACI, Inc. v. Stone, 990 F.2d 1233, 1236 (Fed. Cir. 1993).

## CONCLUSION

For the reasons given above, the Court should grant our motion for partial summary judgment.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Franklin E. White, Jr.
FRANKLIN E. WHITE, JR.
Assistant Director

s/ Sean B. McNamara
SEAN B. McNAMARA
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L St., NW
Washington, D.C. 20530
Tele: (202) 305-7573
Fax: (202) 514-8624

October 15, 2007

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on this 15th day of October, 2007, a copy of the foregoing "DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. The parties may access this filing through the Court's system.

s/ Sean B. McNamara