**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| S & M MANAGEMENT INCORPORATED | ) | |
| | ) | No. 06-155C |
| Plaintiff, | ) | (Judge Sweeney) |
| | ) | |
| V. | ) | |
| | ) | |
| THE UNITED STATES OF AMERICA<br>(DEPARTMENT OF VETERANS AFFAIRS) | )<br>) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff, S&M Management ("Plaintiff") submits this supplemental brief pursuant to an Order filed by this Court on February 7, 2008 (the "Order"). The Order directs Plaintiff to address the following issues: 1) what legal authority that the November 9, 1999 delegation memorandum could be modified orally or by course of conduct, 2) what legal authority supports the position that an individual without the express actual authority of the United States can modify the terms of a government contract, 3) what legal authority supports the position that the inspection and approval of work performed by a contractor by the contracting officer's technical representative or other agency personnel constitutes ratification of modifications to the governmental contract, and 4) what legal authority supports the view that progress payments constitute the ratification of modifications to a government contract?

Facts

The facts of this case are set forth in detail in the Plaintiff's brief in opposition to the defendant, The United States' ("Defendant") motion for partial summary judgment, which Plaintiff respectfully refers this Court to. Defendant does not dispute that it

provided Plaintiff with a notice to proceed for a contract amount of $ 598,000, and that this amount was later increased to $ 678,449.89 (Defendant's Brief ("Def. Br.") at page ("pg.") 3). However, after receiving the benefit of the work performed by Plaintiff, the Defendant now tries to evade paying the amount under the contract between the parties (the "Contract") by claiming that deficiencies exist with respect to Plaintiff's work. This position is entirely baseless.

First, as Plaintiff set forth in its brief, numerous factual issues prevent Defendant prevailing on its motion. For example, one of the alleged "deficiencies" is that Plaintiff improperly installed certain manholes (See Def. Br. at pages ("pgs.") 19-20). Defendant relies upon "common trade practices" to support its position (See Def. Br. at pg. 20). Plaintiff, however, denies the allegation that the manholes were improperly installed in its entirety (See Plaintiff's Brief in Opposition at 7, 16-17). Certainly, issues of fact would exist regarding such an allegation.

Notwithstanding the various factual issues that need to be addressed in relation to the performance of the Contract, the work that was performed by Plaintiff pursuant to the Contract was inspected and approved by either the United States' contracting officer, Michael Shaughnessey ("Shaughnessey"), or Douglas Rod ("Rod"), who was also a representative of the United States (See Plaintiffs Brief at pg. 3 and the Declaration of Salvatore Sciascia ("Sciascia Decl.") at ¶ 2). In addition, Defendant paid for much of the work that it now claims is "deficient."

Thus, to the extent that any work performed by Plaintiff deviated in any way from the initial contract between the parties (the "Contract"), such deviations were at the behest of, and were ultimately approved by, either Shaughnessey or Rod on behalf of

the United States (See Sciascia Aff. ¶ 2). In fact, some of these approvals were in writing, as cut sheets which depicted how certain manholes would be installed were specifically signed off on as "approved" by Rod (See Sciascia Decl. ¶8).

Defendant cannot evade full payment on the basis that the work performed varied from the initial contract when such variations were previously accepted, approved and paid for by the Defendant or its authorized representatives.

## Argument

## POINT I

## PLAINTIFF SHOULD BE GRANTED AN EQUITABLE ADJUSTMENT TO THE CONTRACT PRICE ON THE THEORY OF CONSTRUCTIVE CHANGE

There is a constructive change where "a contractor performs work beyond the contract requirements, without a formal order under the changes clause, either by an informal order of the Government or by fault of the Government." See Miller Elevator Company, Inc. v. United States, 30 Fed.Cl. 662, 678 (1994) ("Miller"). The two base components to a constructive change are the change component, which describes work outside of the scope of the contract, and the order/fault component, which describes the reason why the contractor performed the work. See Miller 30 Fed.Cl. at 678 citing Al Johnson Constr. Co. v. United States, 20 Cl.Ct. 184, 204 (1990); Embassy Moving & Storage Co. v. United States, 191 Ct.Cl. 537, 545, 424 F.2d 602, 607 (1970); Eggers & Higgins & Edwin A. Keeble Assocs., Inc. v. United States, 185 Ct.Cl. 765, 785, 403 F.2d 225, 236 (1968); see also CEMS, Inc. v. United States, 59 Fed.Cl. 168, 203. "Thus, if the Government either expressly or impliedly ordered work outside of the scope of the contract, or if the Government likewise caused the contractor to incur additional work, a constructive change arises for that work performed outside of the

scope of the contract." See Miller 30 Fed.Cl. at 678 citing Lathan Co. v. United States, 20 Cl.Ct. 122, 128 (1990).

In the event that this Court finds that Plaintiff deviated from the Contract, any such deviations were performed pursuant to the instructions of either Shaughnessey or Rod, and were for the benefit of the United States. There has been no evidence set forth implying that any deviations from the Contract were made by Plaintiff on its own volition. Therefore, to the extent the Defendant caused the Plaintiff to incur work outside the scope of the Contract, a constructive change arises over said work, and Plaintiff is entitled to an equitable adjustment.

## POINT II

## THE DEFENDANT WAIVED THE REQUIREMENTS OF THE CONTRACT AND IS ESTOPPED FROM ESCAPING LIABILITY FOR THE CONSTRUCTIVE CHANGES TO THE CONTRACT

Waiver describes the abdication of a right under a contract, and it may occur by implication. See Miller 30 Fed.Cl. at 686. When analyzing government contracts, estoppel "proscribes the Government from escaping liability for statements, actions, or inactions relied upon by another contracting party." See Miller 30 Fed.Cl. at 687. Estoppel therefore prevents undue hardship to a contractor that has detrimentally relied upon an earlier inconsistent position of the government. See Miller 30 Fed.Cl. at 687 citing National Medical Enters., Inc. v. United States, 28 Fed.Cl. 540, 546, n.2 (1993).

A course of dealing describes "[a] sequence of previous conduct between the parties to an agreement which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct." See Miller, 30 Fed.Cl. at 689 (internal citation omitted).

In Miller, the a delegate of the defendant's contracting officer's representative granted oral authorization for work performed outside of a contract between the parties. See Miller, 30 Fed.Cl. at 689-90. The Miller court found that the informal system in which plaintiff received oral approvals from defendant and then presented large work tickets amounted to a prior course of dealing. See Miller, 30 Fed.Cl. at 689-90. Accordingly, the Miller court held that the defendant waived the contractual requirements which require written authorization of the contracting officer for additional work considered outside the scope of the contract, and determined that the defendant was "estopped from escaping liability for the constructive changes to the instant contract." See Miller, 30 Fed.Cl. at 690.

In this case, Plaintiff performed work pursuant to the instructions of Shaughnessey and/or Rod. Shaughnessey or Rod gave oral approval of all work performed, and Defendant continued to pay Plaintiff after Plaintiff performed said work. Clearly, a course of dealing was established, and Defendant retained the benefit of the work performed by Plaintiff. Therefore, to the extent that work was performed outside of the contract, Defendant waived the contractual requirements and is estopped from escaping liability for these constructive changes to the contract. See Miller, 30 Fed.Cl. at 690.

## POINT III

## THE DEFENDANT'S REPRESENTATIVES HAD IMPLIED AUTHORITY TO APPROVE ALL OF THE WORK PERFORMED BY THE PLAINTIFF INCLUDING ANY WORK DEEMED TO BE OUTSIDE OF THE CONTRACT

In Miller, the plaintiff argued that the delegate of the contracting officer's representative had the implied authority to approve additional work outside of the

contract. See Miller, 30 Fed.Cl. at 692. The Miller court stated that where a "Government representative without actual authority exercises an integral part of the duties assigned to that Government employee," the government is bound under the doctrine of implied authority. See Miller, 30 Fed.Cl. at 693-94. In Miller, the aforesaid delegate orally directed the plaintiff to perform work that was beyond his contracting authority, and which required written notices and prior written authorizations. See Miller, 30 Fed.Cl. at 692-94. The Miller court held that under the doctrine of implied authority, the delegate authorized the work performed by the plaintiff, and the government was therefore liable for a majority of the claims made by the plaintiff. See Miller, 30 Fed.Cl. at 694

In this case, Plaintiff performed all of its work pursuant to the directions of either Shaughnessey or Rod – each of who were Defendant's representatives. Therefore, the Defendant is liable for the work performed by Plaintiff under the doctrine of implied authority. At the very least, issues of fact regarding the statements and actions of Shaughnessey and Rod exist, which may further shed light on whether they did indeed possess implied authority.

## POINT IV

## PLAINTIFF IS ENTITLED TO AN EQUITABLE ADJUSTMENT SINCE THE DEFENDANT RATIFIED THE WORK PERFORMED BY PLAINTIFF

Additionally, even in the absence of implied authority, the Defendant ratified the work performed by Plaintiff. In Miller, the plaintiff submitted extra work tickets to the government, and the government customarily approved and paid these bills. See Miller, 30 Fed.Cl. at 695-96 Therefore, the government was held liable for this extra work by ratification. See Miller, 30 Fed.Cl. at 696.

Similarly, in this instant case when Plaintiff submitted its invoices to the Defendant, which included work Defendant now claims is deficient or outside the scope of the initial Contract, the Defendant customarily approved and paid these invoices. The Defendant therefore continually ratified the Plaintiff's work, and should be held liable for all of the work performed by Plaintiff for the benefit of Defendant.

POINT V

IN THE EVENT WORK PERFORMED BY PLAINTIFF WAS DEEMED OUTSIDE OF THE INITIAL CONTRACT A CONTRACT BETWEEN THE PARTIES FOR SUCH WORK IS IMPLIED IN FACT

Lastly, even where no express contract exists, "the Court of Federal Claims and its predecessor courts have long recognized contracts as implied-in-fact where mutuality of intent to contract and the exchange of consideration occurs coterminous between a private person and an authorized representative of the Government." See Miller,30 Fed.Cl. at 700 citing H.F. Allen Orchards v. United States, 749 F.2d 1571, 1575 (Fed.Cir. 1984) cert. denied, 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985). An implied-in-fact contract arises by inference. See Miller, 30 Fed.Cl. at 700 (Internal citations omitted).

In Miller, the court found the defendant to be liable to the plaintiff for all additional work on a theory of implied-in-fact contract, since the plaintiff obtained the oral authorization of an authorized representative of the government for such additional work. See Miller, 30 Fed.Cl. at 700-01. In this case, Plaintiff has taken the position that it received oral authorization and approval by Shaughnessey and/or Rod – both of whom were authorized representatives of the Defendant – for all work performed, including any work that Defendant alleges has deviated from the Contract. Therefore,

Defendant should be liable for all work performed by the Plaintiff under a theory of implied-in-fact contract.

Conclusion

For the reasons set forth above, even if this Court finds that the Defendant's Plaintiff did not perform certain work pursuant to the terms of the Contract, much of the work that Defendant argues is "deficient" was inspected, approved and paid for by Defendant's representatives. Thus, Defendant should be held liable for such work under the theories of constructive change, waiver, estoppel, implied authority, ratification, and implied-in-fact contract. Notwithstanding, Plaintiff certainly has a claim sounding in quantum meruit for the value of the work performed, and which Defendant received the benefit of.

Dated: White Plains, New York
February 22, 2008

McCULLOUGH, GOLDBERGER & STAUDT, LLP

By: ______________________
Edmund C. Grainger, III (EG-8019)
Attorneys for Plaintiff, S&M Construction
1311 Mamaroneck Avenue – Suite 340
White Plains, New York 10605
(914) 949-6400

CERTIFICATE OF SERVICE AND FILING

I hereby certify that on this 22nd day of February, 2008, a copy of the foregoing "PLAINTIFF'S SUPPLEMENTAL BRIEF " was filed electronically. I understand that notice of this filing will be sent to all parties via the Court's electronic filing system. The parties may access this filing through the Court's system. The "PLAINTIFF'S SUPPLEMENTAL BRIEF" was additionally served upon counsel for defendant, via regular mail at the following address:

Sean B. McNamara, Esq.
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L St., NW
Washington, D.C. 20530

s/ Edmund C. Grainger, III