IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| S&M MANAGEMENT INCORPORATED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06-155C |
| | ) | (Judge Sweeney) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S RESPONSE TO PLAINTIFF'S SUPPLEMENTAL BRIEF

Pursuant to the Court's February 7, 2008 order, defendant, the United States, respectfully submits this response to plaintiff's supplemental brief. The Court directed plaintiff, S&M Management ("S&M"), to file a brief addressing four specific questions concerning the authority of the contracting officer's technical representative here to modify S&M's contract. S&M evades answering the Court's questions directly and instead exploits the opportunity created by the Court's order to file a brief alleging "theories of constructive change, waiver, estoppel, implied authority, ratification, and implied-in-fact contract," and, further, "a claim sounding in quantum meruit." Pl. Supp. Br. 8.[1] S&M's evasion is astute, from its perspective; complete and accurate answers to the Court's questions are fatal to its case. We address the Court's questions below, and we then respond to S&M's various unsolicited arguments. For the reasons given below and given in our previous briefs, this Court should grant our motion for partial summary judgment.

[1] "Pl. Supp. Br. ___" refers to S&M's February 22, 2008 supplemental brief. "Supp. App. ___" refers to the supplemental appendix we filed on February 19, 2008. "App. ___" refers to the appendix we filed with our motion for partial summary judgment.

ARGUMENT

I. What legal authority supports the position that the November 9, 1999 delegation memorandum could be modified orally or by course of conduct?

None. As we noted in our motion for summary judgment, the contracting officer here delegated authority to a representative, Michael Shaughnessy, pursuant to the contract's Representatives of Contracting Officers clause. See Supp. App. 43. This clause states that the designation of authority "will be in writing and will define the scope and limitation of the designee's authority." Id. This language is clear: the contracting officer could delegate authority only in writing. S&M has presented no evidence to this effect, but to the extent the contracting officer delegated authority orally, either to Mr. Shaughnessy or to Douglas Rod, such a delegation would be invalid.

The contracting officer could change this clear requirement, but such a change would need to be undertaken pursuant to the contract's Changes clause. See Supp. App. 23. This clause allows for oral changes, but only in the event that the contractor provides written notice to the contracting officer that it regards the oral order as a change. Id. S&M furnished no such written notice to the contracting officer. Absent such notice, the contract explicitly provides that "no order, statement, or conduct of the Contracting Officer shall be treated as a change under this clause or entitle the contractor to an equitable adjustment." Id.

We are aware of no legal authority that supports the position that a contract can be modified in direct contravention to its terms, either orally or through a course of conduct. Any such modification would violate the parol evidence rule. See Schism v. United States, 316 F.3d 1259, 1278 (Fed. Cir. 2002) (en banc) (noting that "a party to a written contract cannot supplement or interpret that agreement with oral or parol statements that conflict with, supplant,

or controvert the language of the written agreement itself.”). Further, agency procedures “must be followed before a binding contract can be formed.” Harbert/Lummus Agrifuels Projects v. United States, 142 F.3d 1429, 1433 (Fed. Cir. 1998). As in Harbert/Lummus, the contracting officer here did not execute any written modifications to the contract concerning the delegation of authority; accordingly, no such modification occurred.

II. What legal authority supports the position that an individual without the express actual authority of the United States can modify the terms of a government contract?

None, at least in this case. An individual without “express actual authority” can modify the terms of a government contract only if that individual possesses implied actual authority. See H. Landau & Co. v. United States, 886 F.2d 322, 324 (Fed. Cir. 1989). Authority to bind the Government may be implied “‘when such authority is considered to be an integral part of the duties assigned to a government employee.’” Id. (quoting J. Cibinic & R. Nash, Formation of Government Contracts 43 (1982) (internal brackets omitted)). Authority to modify a contract is not an “integral part” of an employee’s duties when a contract explicitly confers such authority upon only the contracting officer. Winter v. Cath-dr/Balti Joint Venture, 497 F.3d 1339, 1346 (Fed. Cir. 2007).

The issue of the implied authority of the contracting officer’s representative to modify the contract here is resolved by Cath-dr, which we cited in our reply to S&M’s opposition to our motion for partial summary judgment but which S&M ignores entirely. In Cath-dr, the court of appeals held that a contracting officer’s representative “could not have had the *implicit* authority to authorize contract modifications because the contract language and the government regulation it incorporates by reference *explicitly* state that only the contracting officer had the authority to modify the contract.” Id. (emphasis in original). The situation here is exactly the same: Mr.

Shaughnessy's delegation of authority expressly forbade him from changing the contract. App. 531. Accordingly, he could not have had the implied authority to make such changes. See also Design and Production, Inc. v. United States, 18 Cl. Ct. 168, 205-08 (1989).

III. What legal authority supports the position that the inspection and approval of work performed by a contractor by the contracting officer's technical representative or other agency personnel constitutes ratification of modifications to a government contract?

None. Ratification of an unauthorized commitment by a superior government official requires that such an official: "(1) possess authority to contract, (2) possess full knowledge of the material facts surrounding the unauthorized action, and (3) knowingly confirm, adopt, or acquiesce in the unauthorized action." Gary v. United States, 67 Fed. Cl. 202, 215 (2005). Ratification authority "may never be delegated below the level of chief of the contracting office." Id. (citing 48 C.F.R. § 1.602-3(b)(2) and (b)(3)).

S&M does not allege that the contracting officer, let alone the "chief of the contracting office," ratified its deviations from the contract. Instead, S&M alleges that representatives of the contracting officer ratified its work. The contract and the delegation of authority expressly prohibited such representatives from changing the terms of the contract. Accordingly, those representatives lacked the authority to ratify S&M's work. As we noted in our motion for summary judgment, inspections and approval of S&M's work are irrelevant, given that the contract's inspection clause states that "inspections and tests are for the sole benefit of the Government and do not . . . [c]onstitute or imply acceptance." Def. App. 79; see Fortec Constructors v. United States, 760 F.2d 1288, 1291-92 (Fed. Cir. 1985).

IV. What legal authority supports the view that progress payments constitute the ratification of modifications to a government contract?

None. The contract addresses this question expressly in the Payments Under Fixed Price Construction Contracts clause. See Supp. App. 2-3. Section (f) of this clause provides that "[a]ll material and work covered by progress payments made shall, at the time of payment, become the sole property of the Government, but this shall not be construed as . . . [w]aiving the right of the Government to require the fulfillment of all of the terms of the contract." Id. Pursuant to the plain terms of the contract, then, the Government did not ratify S&M's deviations from the contract by issuing progress payments. This result is not contravened by Miller, where the Court found that the Government ratified a contractor's extra work through a contracting officer's repeated approval of that work and payment of bills. Miller, 30 Fed. Cl. at 695-96. The bills addressed in Miller were not construction progress payments governed by a payments clause; they were discrete invoices stemming from a service contract. Id. at 666-67. The Government's approval and payments in Miller are thus distinguishable from the payments issued here.

V. S&M's Various Theories Lack Merit

S&M buries its incomplete responses to the Court's questions in Points III and IV of its supplemental brief. We address those responses above; below, we address the additional arguments advanced by S&M. S&M did not raise these arguments in either its complaint or its response to our motion for partial summary judgment, and raising them now sua sponte is inappropriate. Regardless, none of S&M's theories has any merit.

A. No Constructive Change Occurred Here

First, S&M alleges for the first time that it is entitled to an equitable adjustment based upon a constructive change. Pl. Supp. Br. 3-4. In particular, S&M alleges, without citation to

any factual support, that any deviations from its contract "were performed pursuant to the instructions of either Shaughnessey [sic] or Rod, and were for the benefit of the United States," giving rise to a constructive change. Id. at 4. In its response to our motion for partial summary judgment, S&M contended merely that any deviations from its contract were inspected and approved by the Government, not that such deviations were affirmatively ordered. See Plaintiff's Opposition to Defendant's Motion for Partial Summary Judgment at 3, filed on October 1, 2007. Given that S&M's argument is untimely and has no factual support, the Court should reject it.

Further, S&M's argument distorts the doctrine of constructive change — S&M did not perform work, as the doctrine requires, "outside of the scope of the contract" or "beyond the contract requirements." Instead, as we establish in our motion for partial summary judgment, S&M did less than the contract required, or at least failed to comply with the contract's specifications. Accordingly, the Government withheld a portion of the contract price. S&M's complaint is consistent with this notion, at least to the extent that it does not allege that S&M performed work beyond the terms of the contract; the complaint alleges that S&M "performed all of its duties pursuant to the Contract." Complaint ¶ 5. The question actually presented by this case, and already briefed, is whether S&M complied with the plain terms of its contract. S&M's request for an equitable adjustment is thus unfounded.

B. The Government Did Not Waive Any Contract Requirements

S&M next asserts that the Government waived the requirements of the contract through a course of dealing, and that we should thus now be estopped from relying upon the contract's terms. Pl. Supp. Br. 4-5. Specifically, S&M asserts that its work was approved and paid for by the Government, allowing it to deviate from the contract's plain terms. This argument lacks

merit, for at least two reasons. First, evidence of a course of dealing cannot be used to alter the plain terms of an agreement. Alves v. United States, 133 F.3d 1454, 1459 (Fed. Cir. 1998); McAbee Const. Inc. v. United States, 97 F.3d 1431, 1435 (Fed. Cir. 1996). The terms of S&M's contract required any changes to be issued by the contracting officer; no course of dealing here altered that plain requirement. Second, just as the contracting officer's representative here had no authority to change the terms of the contract, he also lacked authority to waive the contract's requirements. See L. B. Samford, Inc. v. United States, 410 F.2d 782, 788 (Ct. Cl. 1969) ("It is a well established rule of law that the doctrine of estoppel cannot be applied against the defendant on account of unauthorized statements or acts of an officer or employee who is without authority in his individual capacity to bind the defendant.").

C. No Implied-In-Fact Contract Arose Here

S&M also asserts that the Government "should be liable for all work performed by the Plaintiff under a theory of implied-in-fact contract." Pl. Supp. Br. 7-8. This argument is groundless. The general requirements for both express and implied contracts with the United States are the same. Trauma Service Group v. United States, 104 F.3d 1321, 1325 (Fed. Cir. 1997). The party alleging a contract "must show a mutual intent to contract including an offer, an acceptance, and consideration," and must show "that the Government representative who entered or ratified the agreement had actual authority to bind the United States." Id.

As we establish above, S&M cannot show that anyone with actual authority to bind the United States agreed that it could deviate from the contract. Moreover, given that the work for which S&M seeks compensation was covered by its express contract with the Government, S&M cannot prove the existence of an implied contract. See Schism, 316 F.3d at 1278 ("It is well settled that the existence of an express contract precludes the existence of an implied-in-fact

contract dealing with the same subject matter, unless the implied contract is entirely unrelated to the express contract. ").

D. S&M Does Not Have A Claim Sounding In Quantum Meruit

Finally, S&M asserts that it "certainly has a claim sounding in quantum meruit for the value of the work performed, and which Defendant received the benefit of." Pl. Supp. Br. 8. This claim lacks merit. To the extent that S&M alleges a recovery pursuant to an implied-in-law theory of quantum meruit, this Court lacks jurisdiction to entertain S&M's claim. See International Data Products Corp. v. United States, 492 F.3d 1317, 1325-26 (Fed. Cir. 2007). To the extent that S&M alleges quantum meruit based upon an implied-in-fact contract, S&M's claim must fail because, as we establish above, no such valid contract exists.

CONCLUSION

For the foregoing reasons, and on the basis of our previously submitted briefs, this Court should grant our motion for partial summary judgment.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Franklin E. White, Jr.
FRANKLIN E. WHITE, JR.
Assistant Director

s/ Sean B. McNamara
SEAN B. McNAMARA
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L St., NW
Washington, D.C. 20530
Tele: (202) 305-7573
Fax: (202) 514-8624

March 5, 2008

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on this 5th day of March, 2008, a copy of the foregoing "DEFENDANT'S RESPONSE TO PLAINTIFF'S SUPPLEMENTAL BRIEF" were filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. The parties may access this filing through the Court's system.

s/ Sean B. McNamara